THE STATE v. STERRETT.

1. **Criminal Evidence:** HOMICIDE: PEACEFUL DISPOSITION OF DEFENDANT. Defendant was accused of murder committed in the midst of an altercation with a school-mate. *Held* that he was entitled to prove the *fact* that he was of a quiet and peaceable disposition, by witnesses who showed themselves competent to testify to such fact, and that he was not confined to proof of his *reputation* in the community where he lived.

2. **Criminal Law:** HOMICIDE: SELF-DEFENSE. In prosecutions for homicide, where self-defense is relied upon, the question is whether the circumstances were such as to lead a reasonably prudent man (not a reasonably prudent man of defendant's age, condition of health and temperament) to believe that the killing was necessary, in order to avoid death or great bodily injury at the hands of the deceased.

3. **Evidence:** PRIVILEGED COMMUNICATION: STATEMENT TO COUNSEL IN PRESENCE OF STRANGER. If a client chooses to make a statement to his attorney in the presence of persons not employed in the business of the attorney, such persons are not forbidden to disclose it.

*Appeal from Louisa District Court.*

THURSDAY, DECEMBER 17.

THE defendant was accused of murder of the second degree, committed, as charged in the indictment, in the killing of one Wade Campbell. On the trial of the indictment he was convicted of manslaughter, and sentenced to a term of imprisonment, and from this judgment he appeals.

*Newman & Blake* and *Hall & Huston*, for defendant.

*A. J. Baker, Attorney-general*, for the State.

REED, J.—At the time of the transaction in question, the defendant was about sixteen, and the deceased, about eighteen,

years of age. They were pupils in the same school, and sat near each other in the school-room. On the day of the occurrence the defendant, feeling some inconvenience from the heat of the stove, raised a window near which he and the deceased were sitting. Deceased immediately closed the window. Defendant raised it again, and placed a book under it. In a short time after this occurrence the school was dismissed for a recess. Soon after defendant passed out of the school-house he was attacked by the deceased, who went out ahead of him and waited for him near the door. Campbell was considerably larger than the accused, and handled him quite roughly in the struggle in which they engaged. When he first attacked him, he gave him a jerk which whirled him around, and threw him onto his hands and knees. When the defendant got upon his feet, Campbell seized him again, and there was evidence tending to show that he caught him by the throat, and was choking him. During the struggle defendant drew a pistol from his pocket, which was discharged against Campbell's person. The ball entered his chest, inflicting a wound of which he died in a few minutes. Defendant testified that he had no intention to shoot Campbell when he drew the pistol, but that his purpose in drawing it was to intimidate him, and thereby induce him to desist from the assualt upon him, and that he did not cock the weapon or intentionally discharge it. There was other evidence, however, tending to prove that he declared during the struggle that he would shoot him unless he desisted from the attack upon him. Also that he afterwards stated that he had shot him, and that he did so because he was abusing him. On behalf of the defendant it was contended—*First*, that the killing of Campbell was by misadventure; and, *second*, that if the act which occasioned his death was intentionally committed by defendant, it was done in the reasonable and lawful defense of his own person from injury from the assault which Campbell was committing upon him. And both these questions were submitted to the jury.

The State v. Sterrett.

I. On the trial, defendant produced a witness by whom he proposed to prove that he was well acquainted with defendant, and had had opportunity of observing him and knowing his disposition, and that he was of a quiet and peaceable disposition, and not quarrelsome or addicted to strife. But, on the objection of the state, this evidence was excluded. The ground of the objection is not stated in the abstract, and the attorney-general contends ·that the evidence was properly excluded on the ground that the offer was to prove the personal observation and knowledge of the witness as to the trait of character in question, and not the general reputation of the defendant in that respect in the community in which he lived. His position is that it is the estimate which the community has attached to him, rather than his real qualities as conceived by the witness, which the defendant is entitled to give in evidence. That this position has the support of some text-writers is certainly true, and adjudicated cases sustaining it are not wanting. In our opinion, however, there exists no sound reason for the holding that the proof should be confined to the reputation of the defendant with respect to the trait of character in question. The object of introducing evidence with reference to the character of the accused is to establish a fact upon which the presumption of his innocence may be based. The purpose of the evidence is to show that his disposition is such that he would not be likely to commit the crime of which he is accused, and that there is therefore a strong presumption that he did not commit it. But this presumption rests not upon the reputation that he possesses certain traits of character, but upon the fact that he possesses them.

*1. CRIMINAL evidence: homicide: peaceful disposition of defendant.*

The question, then, is whether he is in fact of a certain disposition, and not whether he is reputed to be of that disposition. Evidence that he is reputed to possess certain traits of character may be competent evidence tending to prove that he does possess them, but it is by no means the only

competent evidence of that fact. We see no reason why any witness who is shown to have had opportunities for forming a just estimate of his character should not be permitted to testify with reference to it. This view is supported by *State v. Lee*, 22 Minn., 407. The defendant was entitled to have the fact that he was of a peaceful disposition (if he was able to establish it) considered by the jury in determining each of the questions which were submitted to them.

II. The court instructed the jury, in effect, that the killing of Campbell, if it was willfully committed, was not jus-

2. CRIMINAL law: homicide: self-defense.

tifiable on the ground of self-defense, unless the circumstances were such that a reasonable person, in defendant's situation, would have been led thereby to believe that he was about to suffer death or great bodily injury at the hands of Campbell. He also told the jury that, in determining whether the defendant acted in reasonable self-defense, they ought to consider the relative, age, size, strength and condition of the parties, the character of the assault by Campbell, and all the circumstances of the transaction as shown by the evidence. Counsel for the defendant contended that the dangers of the situation ought to be judged from the circumstances as they actually appeared to the defendant, and that his youth, and the immaturity of his judgment, should be considered in determining whether he acted with reasonable prudence in killing his assailant; and if the circumstances were such as would have led a reasonably prudent person of his age, condition of health and temperament to believe that the necessity existed for killing the assailant as the only means of preserving his own life, or of protecting his person from great injury, the killing was justifiable, even though a person of more mature judgment might not have been led to that belief by the circumstance; and they presented to the court a number of instructions expressing those views, and asked that they be given to the jury, but the court declined to give them. If the doctrine contended for by counsel should prevail, it would result that

every case of homicide in which the question of self-defense should arise would involve an inquiry as to the mental peculiarities of the accused; and the question as to the justifiableness of the killing would be determined with reference to his ability to form a correct judgment from the circumstances as to the dangers of the situation, rather than with reference to any rule that could be applicable to other cases that might arise. It could seldom happen, we apprehend, that two persons would be impressed in precisely the same way by the same combination of circumstances. A timid man might regard himself as placed in a position of great peril by a set of circumstances which one of more courage would not look upon as creating any danger at all; and, under the doctrine contended for, the one would be held excusable if he took the life of an assailant, while the other would be held criminally responsible for doing the same act under precisely the same circumstances. We cannot think that a doctrine which would lead to such results should be held to constitute any part of of a system of laws which, like our system, is designed to have uniformity of operation.

The district court, we think, laid down the true rule on the subject. The dangers of the situation must be judged from the facts as they appeared to the defendant; but the killing is not excusable unless the facts as they thus appeared would have justified a reasonable belief that there existed an actual necessity for it. The defendant is entitled to the benefit of every fact which was apparent or known to him at the time, and which would give him any indication of the extent of the danger. But he cannot claim immunity for the killing if he acted on an unreasonable conclusion as to the extent of the danger. The question is not what conclusion he in fact did draw from the circumstances, but what inference ought in reason to have been drawn from them.

III. A witness called by the state was permitted, against defendant's objection, to testify to a statement made by defendant to his counsel concerning the transaction. The

**3. EVIDENCE: privileged communication: statement to counsel in presence of stranger.** witness was in no way connected with the counsel, but claims to have been in hearing of the parties when the statement was made. The counsel could not have been required to testify to the statement, (Code, § 3643; 1 Greenl. Ev., § 237,) and, under the same rule, the clerk of an attorney is not compellable to disclose facts coming to his knowledge in the course of his employment. Id., § 238. But the rule goes no further than this. If the client chooses to make his statement in the presence of other persons than his attorney and those employed in the business of the attorney, such persons are not forbidden to disclose it. *Jackson v. French*, 3 Wend., 339; *Hatton v. Robinson*, 14 Pick., 416.

For the error in excluding the evidence with reference to defendant's character, the judgment will be

REVERSED.