## THE STATE v. ARCHER.

1. **Instruction:** NO EVIDENCE TO SUSTAIN. An instruction which assumes as a material fact in the case a statement of which there is no evidence cannot be sustained.

2. **Homicide:** SELF-DEFENSE BY DEFENDANT WHEN GUILTY OF TRESPASS. Where defendant, without any intention of provoking a quarrel with deceased, and without any knowledge or expectation that a conflict with him would thereby be provoked, committed a technical trespass on his premises, but, when commanded to do so, desisted from such trespass, and left the premises; but deceased, annoyed and provoked by the fact that a trespass had been committed, immediately assaulted defendant, and the circumstances of the assault were such as to indicate an intention on his part to take the life of defendant; *held* that, since defendant was not in the wrong with regard to the *assault*, if he took the life of his assailant in resisting such assault he would not be precluded from availing himself of the plea of self-defense because he was in the wrong in regard to the *trespass*.

3. ———: WHEN JUSTIFIABLE: SELF-DEFENSE: INSTRUCTION. One who is assailed is not excusable in taking the life of his assailant in self-defense, unless the circumstances of the assault upon him are such as would lead a *reasonable* man, in defendant's position, to believe that his life was about to be taken, or that some serious bodily injury was about to be inflicted upon him. It is not sufficient if the person assailed *in fact* so believes. (*State v. Sterrett*, 68 Iowa, 76, followed.)

*Appeal from Appanoose District Court.*

WEDNESDAY, OCTOBER 6.

THE defendant was accused, by indictment, of murder in the first degree, committed, as was charged, in the killing of one George Woods. He was found guilty of manslaughter, and sentenced to a term of imprisonment in the penitentiary, and from that judgment he appeals.

*Tannehill & Fee,* for appellant.

*A. J. Baker, Attorney-general,* for the State.

REED, J.—The killing of George Woods occurred on the third of October, 1884. On the morning of that day the defendant left his home, accompanied by his wife and children, intending to spend the day gathering nuts in the timber bordering the Chariton river. The road on which they traveled passes through the farm of the deceased, and, when defendant reached that place, he left his team and wagon in the road, and went on foot into a partially inclosed pasture belonging to deceased; his object, as he testified, being to ascertain whether he could reach the timber to which he wished to go by driving through the pasture. Deceased had also left his home that morning with several members of his family, intending to go to a neighboring town, and the parties met on the highway, about a mile east of the farm. But, soon after defendant went into the pasture, deceased returned to his house, riding quite rapidly, and inquired of his daughter, who was at the house, where defendant had gone; and, being informed that he had gone into the pasture, he directed her to get his gun, which she did. He took the gun, and immediately went on foot into the pasture, to where defendant was, and ordered him to leave his premises immediately; and defendant testified that with this command was coupled the threat that, unless it was obeyed, he would shoot

him; and defendant's wife, who remained with the wagon, testified that when deceased was informed that defendant was in the pasture he declared that he would shoot him; but this is denied by two daughters of the deceased, who were at the house at the time. Immediately after deceased commanded defendant to leave the premises the parties started towards the wagon, which was still on the road, walking within a few feet of each other. When defendant reached the wagon he seized a gun which was in it, and fired two shots at the deceased, which inflicted wounds upon his person of which he died in a few moments.

Defendant testified that as they were walking towards the wagon deceased repeated the threat that he would shoot him unless he left the place, and also stated that he would shoot him if he gave him a "saucy word," and that he replied to him that he did not want to have any trouble, and that he would leave the place at once; but that when he reached the wagon deceased declared that he would shoot him "any way," and that he was in the act of raising his gun, as if to shoot, when he seized his gun, and fired the first shot; and that deceased did in fact fire a shot at him at the same instant; and that he was in the act of again raising his gun, as if to fire, when he fired the second shot; and his testimony with reference to the facts of the transaction is corroborated by that of his wife. It was contradicted, however, in many particulars, by the daughters of the deceased. They testified that before the shooting their father had turned away from the defendant, and was walking towards his home, and that he was induced to turn towards defendant by something that defendant said to him; and that, as soon as he turned, defendant fired the first shot; and that he did not raise his gun, or make any effort to shoot defendant, but was in the act of turning away, as if to leave the place, when defendant shot him the second time.

The principal question in the case is whether the killing was justifiable on the ground that the act was done in self-

defense.   The court gave a number of instructions to the
jury on the law of self-defense, among which were the fol-
lowing:

" (18) The right of self-defense, as a legal excuse or justi-
fication, does not exist when a defendant himself is in the
wrong in bringing on the difficulty.   When one is in the
wrong in bringing on a conflict, he is not in law excused if
he kill his assailant, even when such killing is necessary to
save his life or person from serious injury; but he is guilty
of some offense, according to the circumstances of the case.

" (19) The defendant had no right to go upon the inclosed
or even uninclosed lands of Woods, if he was himself for-
bidden to do so, or if he knew Woods did not want him or
others to trespass upon his ground.   In such case it was the
duty of the defendant to respect the wishes, desires, or com-
mands of Woods, and keep off his grounds; and if defend-
ant went upon the grounds knowing or believing, if found
there by Woods, that it would bring on a conflict, then the
defendant in so doing was in the wrong; and if you find
that a conflict was brought about by reason of defendant's
trespass under the said state of facts, and you further find
that in such conflict the defendant shot and killed Woods,
then you are instructed that the defendant's plea of self-
defense falls to the ground, and the defendant would be
guilty of some offense, to be determined by you, under the
evidence in the case, in the light of these instructions.   In
such case, while Woods would not have the right to take the
life of the defendant, or attempt to take it, or to do defend-
ant serious bodily injury on account of the trespass, and
defendant might in such case kill Woods to save his own
life, or save his person from serious injury, yet he would not
be entirely justified in so doing."

The general rule undoubtedly is that one who takes the
life of his adversary, in a conflict in which he is the aggressor,
or which is provoked or brought about by his unlawful or
wrongful act, is not excusable on the ground of self-defense.

The eighteenth instruction correctly states this general rule. The other instruction was given with the view, doubtless, of applying this rule to a state of facts which it was supposed the evidence tended to prove. The proposition embodied in it is that if defendant knew or believed, when he went upon the premises, that his presence, if he should be there found by Woods, would provoke a conflict, and the conflict which followed was provoked by this trespass, and he killed Woods in that conflict, he is not excusable, even though the killing was necessary for the preservation of his own life, or the protection of his person from serious injury.

In our opinion, the instruction cannot be sustained. In the first place, it is not strictly applicable to any state of

1. INSTRUC-TION: no evidence to sustain.

facts which the evidence tended to prove. By it the knowledge or belief by defendant that his presence upon the premises, if he should be found there by the deceased, would provoke a conflict, is made a material element in the case. But there is no evidence that he knew, or had any reason to suppose, that he would meet Woods upon the premises. He had met him a short time before on the highway, going in the direction away from his home. Nothing occurred at that time to indicate that he would follow defendant back to his place, nor did defendant have any knowledge that he had returned until after he had gone into the pasture. He could not then have known or believed that, by going into the pasture, he would provoke a quarrel or conflict with Woods. The instruction is erroneous, then, in that it is not applicable to the facts of the case; or, rather, there is an entire absence of evidence tending to prove a fact which by the instruction is material to the case.

In the next place, when this element of knowledge or belief by defendant is eliminated from the case, the remain-

2. HOMICIDE: self-defense by defendant when guilty of trespass.

ing facts afford no ground for the application of the rule expressed in the eighteenth instruction. In considering the instruction in question, it

must be assumed that the immediate circumstances of the shooting were as testified to by defendant and his wife; for it was with reference to that state of facts that the instruction was given. The question which was intended to be covered by it is whether, considering that those were the facts immediately attending the transaction, the killing was excusable. With this assumption, then, the facts are that defendant, without any intention of provoking a quarrel with deceased, and without any knowledge or expectation that a conflict with him would thereby be provoked, committed a technical trespass upon his premises. When commanded to do so, he desisted from such trespass, and left the premises. But deceased, annoyed and provoked by the fact that the trespass had been committed, immediately assaulted defendant, and the circumstances of the assault were such as to indicate an intention on his part to take the life of defendant.

Now, the question which arises on this state of facts is whether the defendant might lawfully take the life of the assailant in resisting such assault. We are very clearly of the opinion that he would not be precluded from availing himself of the plea of self-defense for the reason alone that the assault upon him was provoked by his trespass; for, while he was technically in the wrong in committing the trespass, yet as that act was not done for the purpose of provoking the assault, or with the knowledge or expectation that it would have that effect, he was not in the wrong with reference to the assault. In the recent case of *State v. Perigo*, 28 N. W. Rep., 452,* we disapproved an instruction which announced substantially the same doctrine as the one in question.

In other instructions the jury were told, in effect, that defendant would not, in any event, be excusable on the ground of self-defense, unless the circumstances of the assault upon him were such as would lead a reasonable man, in defendant's position, to

3. ———; when justifiable: self-defense: instruction.

* The opinion in this case is retained upon a petition for rehearing on another question, and hence it does not yet appear in the official reports. —REPORTER.

believe that his life was about to be taken, or that some serious bodily injury was about to be inflicted upon him. Exception is taken to these instructions. Counsel for defendant insist that the true rule is that if the accused in fact believed that the danger to his life or person was imminent, and that belief was created by the circumstances of the assault upon him, he is excusable. We examined the question here presented in the case of *State v. Sterrett*, 68 Iowa, 76, and we there held that, while the danger of the situation must be judged from the circumstances as they appeared to the accused, the killing was not excusable unless the facts as they thus appeared would have justified a reasonable belief that there existed a necessity for it as the only means of preventing the threatened injury. The instructions in question are in accord with that holding.

For the error in the nineteenth instruction the judgment will be reversed, and the cause remanded.

REVERSED.