STATE OF IOWA v. JOSEPH USHER, Appellant.

**Manslaughter:** EVIDENCE: STATEMENTS OF ACCUSED. Where a witness had testified that defendant, accused of manslaughter, had related the occurrences of the night of the homicide, it was proper to ask him if he had said anything concerning the usual conduct of deceased.

**Same:** CONVERSATION BY TELEPHONE: IDENTITY. The testimony of a witness that he had talked with defendant over the telephone was sufficient proof of identity to take that question to the jury, and to permit evidence of the conversation.

**Same:** HYPOTHETICAL QUESTIONS. Where there was no evidence as to how deceased was killed except that he was found lying on the bed with a bullet hole through his body,.a hypothetical question assuming that he was in that position when killed was not improper.

**Same:** COMPETENCY OF EVIDENCE. Evidence tending to establish murder will not be excluded in a prosecution for manslaughter if it bears directly upon an issue to be decided.

**Self-defense:** EVIDENCE. A person accused of manslaughter cannot claim immunity for the killing because he was a nervous, timid man and therefore acted upon an unreasonable conclusion that the killing was necessary to his self-defense.

**Sentence:** FIXING TIME: PREJUDICE. Although the court pronounced judgment against a defendant convicted of crime without previously fixing the time as prescribed by statute, still since accused had filed his motion for a new trial several days previous to his sentence, and made no further claim for error or in mitigation of punishment, there was no prejudicial error.

*Appeal from Linn District Court.*—Hon. J. H. PRESTON, Judge.

TUESDAY, MAY 7, 1907.

REHEARING DENIED, MONDAY, DECEMBER 16, 1907.

THE defendant was convicted of the crime of manslaughter and appeals.—*Affirmed.*

*Redmond & Stewart, Cooper, Clemans & Lamb,* and *Smith & Smith,* for appellant.

*Chas. W. Mullan, Attorney General,* and *Lawrence De Graff, Assistant Attorney General,* for the State.

LADD, J.— The facts are accurately stated in the opinion filed on the former appeal. 126 Iowa, 287. But one

circumstance need be added. The physicians testified that the bullet entered the body of William Garrity immediately below the fourth or fifth rib, and about an inch above the left nipple, and, after passing through the left lung, lodged on the left side of the eighth dorsal vertebra. The distance through the body was twelve or fourteen inches, and the ball deflected downward from three to five inches. Its course was such as to indicate that the rifle must have been aimed from above, and that, as Garrity was the taller man, and according to defendant's last statement, the gun was fired by defendant at a distance of five feet, it is not likely that deceased was standing at the time. This is important as tending to show that deceased was still on the bed, possibly sitting on the edge, and that there was not ground for reasonable apprehension of danger to defendant's life or limb. The case is somewhat peculiar, involving some circumstances strongly indicative of innocence, and others apparently inconsistent with any hypothesis other than of guilt. A separate examination of the record, however, has confirmed our conclusion of the former appeal that the verdict is supported by the evidence.

II. Several witnesses who had testified that defendant related to them the occurrences of the night Garrity was killed were asked in substance whether he had said anything concerning any unusual conduct on the part of Garrity. Objections thereto were rightly overruled, as it was subsequently claimed by him that deceased, when out in the yard, had called his attention to seeing things in the air, and also, in his written statements, that deceased lately had been acting oddly. The fact that this circumstance was omitted when relating Garrity's condition prior to his death was proper to be taken into consideration as bearing on the credit to be given his subsequent story. The questions were not objectionable as leading, as they necessarily called for negative testimony.

1. MANSLAUGHTER evidence: statements of accused.

III.   One Gibney testified:   "I talked to Usher over
the phone to Spicer's."   He was then asked:   "You may
state what, if anything, defendant said to you, and what he
answered."   This was objected to as incom-
petent, irrelevant, and immaterial and because
defendant could not be bound by a statement
made over a telephone; the means of identification be-
ing indefinite and uncertain.   The objection was over-
ruled, and the witness answered:   "To the best of my
knowledge I supposed it was Mr. Usher."   Evidently he was
undertaking to answer the objection, instead of the question,
and was asked:   "What did he say?"   The same objection
was repeated several times and overruled, and the witness
testified that, among other things, they discussed the pro-
priety of calling the township trustees.   The court's rulings
are vigorously assailed on the theory that the defendant was
not identified as the person at the other end of the line.   The
testimony of the witness that the talk was with Usher in-
volved an identification of him by the sound of his voice.
This was confirmed by his subsequent statement, not in re-
sponse to the question, that in his best judgment he supposed
the person with whom he talked was Usher.   There was no
cross-examination on this subject, and, as the witness affirm-
atively asserted that the conversation was with defendant,
we think the identification sufficient at least to carry the
question as to identity to the jury.   That the conversation
occurred is strongly confirmed by the testimony of Spicer
and Donahue.   The latter, after saying that he had
heard a conversation over the telephone, was asked, "Did
you hear the defendant talking over the phone that night?"
and, over objection similar to that above, answered, "Yes;
If I had to say anything I would say, 'Yes.'"   He was
then allowed to recite a conversation between defendant
and Gibney as detailed by the latter.   The record does not
indicate the cause of the witness' reluctance to answer.   For
all that appears, it may not have been owing to any doubt

*2. SAME: conversation by telephone: identity:*

as to identity. At any rate, the identification was such as to justify the admission of his testimony. The doubt as to identity in both instances is mere matter of inference, and, undeveloped by cross-examination, not sufficient to justify the exclusion of the evidence. See *Shawyer v. Chamberlain,* 113 Iowa, 743; 3 Wigmore on Ev. section 2155.

IV. In one of the hypothetical questions the state assumed that deceased was lying on the bed sleeping or awake, and objection was made that this assumed a fact not proven.

3. SAME: hypothetical questions.     At that time no evidence had been introduced as to how he had been killed, save that he had been found lying on the bed with a bullet hole through his body. Somebody must have fired the ball, and, in the absence of any proof of how this happened, his condition, save when found, was rightly left uncertain.

But it is said that the inquiry was not permissible, as it assumed deliberate and premeditated murder, when the accused was on trial for manslaughter only. The inquiry

4. SAME: competency of evidence.     bore directly on the issue of self-defense, and, as tending to show that the shot could not have been so fired, the evidence sought was admissible, even though inferentially assuming that the crime might have been greater than manslaughter. The mere fact that evidence may tend to establish murder will not require its exclusion in a trial for manslaughter, if it bears directly on the issues to be decided. If the defendant killed deceased without provocation, as the jury might have found, in view of his contradictory statements and the course of the bullet, he must have been convicted of manslaughter, for this was included in the higher crime of which he had been acquitted on the first trial. In other words, it was open to the state to show either that there was no provocation, or that, there being such, it was insufficient to justify the shooting, and any evidence tending to establish either of these issues was admissible.

The objection to the cross-hypothetical question pro-

pounded to Dr. King was rightly sustained, as the evidence then before the court did not tend to sustain all the facts recited. Other rulings on the admissibility of evidence are so manifestly correct or without prejudice, if erroneous, as not to call for discussion.

V. The court gave the usual instructions concerning the issue of self-defense. Counsel insist that, as defendant was a nervous, timid man, he should not be held to the exer-

5. SELF-DEFENSE: evidence.

cise of ordinary prudence and courage in determining whether his life or limb was in danger, but merely to such a degree of courage and prudence as like persons ordinarily exercise. This contention first appeared in *State v. Thompson,* 9 Iowa, 198, and was explicitly answered and repudiated in *State v. Sterrett,* 68 Iowa, 76, followed in *State v. Archer,* 69 Iowa, 420. The instructions were correct.

VI. The verdict was returned prior to May 19, 1906, when a motion for a new trial was filed, which on the 24th of that month was overruled. On the same day, without

6. SENTENCE: fixing time: prejudice.

previously fixing the time, defendant was sentenced. This was contrary to section 5431 of the Code, requiring the court to fix the time of pronouncing judgment in advance and at least three days after verdict if the court continues in session that long. The object of this section is to afford defendant ample time to prepare his application for new trial. *State v. Marvin,* 12 Iowa, 499. And, as it is mandatory in form, it cannot be disregarded, save upon a clear showing that defendant has not been prejudiced. *State v. Watrous,* 13 Iowa, 489. The defendant had filed his motion for new trial several days previous, and no claim is made that he desired to make any other showing of error or in mitigation of punishment. The record, therefore, rebuts any presumption of prejudice arising from ignoring this provision of statute. *State v. Stevens,* 47 Iowa, 276.

The judgment is *affirmed.*