STATE OF IOWA, Appellee, v. TED E. HARTUNG, Appellant.

No. 47045.

(Reported in 30 N. W. 2d 491)

January 13, 1948.

Rehearing Denied March 12, 1948.

Walter F. Maley and R. R. Nesbitt, both of Des Moines, for appellant.

John A. Rankin, Attorney General, Charles H. Scholz, Assistant Attorney General, and Edward Kelley, County Attorney, for appellee.

Smith, J.—Defendant was charged by county attorney's information, under section 723.1, Code, 1946, with the crime of interference with the administration of justice. After an application for bill of particulars had been denied and a demurrer to the information overruled there was filed an amendment to the information in which it was specified that the crime was committed by attempting "to improperly influence, intimidate, impede, or obstruct" the county attorney in relation to two pending criminal prosecutions against Donald Stanfel and Carl Robinson, respectively.

Attached to and filed with the original information were "minutes of evidence" setting out proposed testimony of witnesses Clinton Summers, Freeda Rowland, Moody Vineyard, and B. M. Soper, county attorney, stating substantially the facts that later developed on the trial.

The pending prosecutions against Stanfel and Robinson were for alleged rape upon Freeda Rowland, under the name Marie Summers. The informations were sworn to by Clinton Summers. Both Stanfel and Robinson, by defendant as their attorney, had waived preliminary hearing and had been bound over to the grand jury.

Defendant urges eleven "points relied on for reversal," argued under seven divisions of his brief. We may save needless repetition by stating them as we proceed with their discussion.

We first brief the material facts. On or about October 29, 1946, while Clinton Summers and Freeda Rowland (Marie Summers) were hitchhiking near Nevada, the woman was attacked by two strangers. Later that evening she and Summers were taken by the sheriff of Story county to Des Moines where they identified Stanfel and Robinson as the attackers.

The two men were arraigned the next day in municipal court in Ames, defendant appearing for them, and they were bound over to await the action of the grand jury. Summers and Mrs. Rowland returned to St. Louis, Missouri.

On November 10th, according to the undisputed testimony, defendant approached them in St. Louis. He told them that he was the attorney for Stanfel and Robinson; that "the case was going to be throwed out, nothing to it; and that the people of Des Moines was * * * backing them up in their character and they had no records at all." He showed them pictures of a boy and girl he told them were Stanfel's children. He also produced already prepared statements for them to sign, remarking they "might as well get something out of this."

They told him they had identified the man in Des Moines and he said it did not make any difference, that both men were "wonderful characters and had never been in any trouble before." He was there approximately three hours.

He offered them $100 to sign the papers he had and promised them $500 more. He said: "All you have to do is not to identify the men" when asked to identify them. After the paper was signed by both Summers and Mrs. Rowland defendant gave Mrs. Rowland, or laid on the table, $100 in bills and said "he would be back in a week, if not that he would get the rest of the money, if he wasn't back in a week to call him up and reverse the charges." Summers did call back on November 20th and inquired of defendant when he was coming down.

We have set out above from the testimony of Summers. Mrs. Rowland's testimony closely parallels it. She adds that defendant told her "* * * to pack my things and leave St. Louis and go

to California and that no one would know where I was at and I wouldn't have to come up here."

Mr. Soper, who was county attorney at that time but resigned the office effective November 15, 1946, testified that defendant came to him November 13th and said: "Well, our rape cases has blowed up. * * * I have a statement here that I got from Mr. and Mrs. Summers." He handed the county attorney the document he had obtained execution of in St. Louis, which was as follows:

"AFFIDAVIT.

"To Whom It May Concern:

"This is to advise you that we made a complaint to the authorities in Nevada, Iowa, on the 30th day of October, 1946, against Donald Stanfel and Carl Robinson, that we charged them with the offense of rape, that after having had time to consider the ordeal we have come to the conclusion that we are not sure of the identity of the two men charged, Donald Stanfel and Carl Robinson, and we would not care to further press the charges against these two men, and we do not intend to return to Iowa to do so. We further recommend and implore either the County Attorney, B. M. Soper, or Mr. Ed J. Kelley, who, we understand, will be the County Attorney, to use this Affidavit for the purpose of dismissing the charges we filed against Donald Stanfel and Carl Robinson.

"Witness, our hand and seal this 10th day of November, 1946.

"(s) Marie Summers

"Clinton Summers."

The county attorney told him, "I sent them a telegram this morning and hadn't received a reply," and defendant replied, "They are on their way to California." The county attorney said, "It must have cost somebody some money" to which statement defendant made no denial. Mr. Soper later the same day received a telegram from Summers: "I and my wife Marie Summers are still standing for affidavit and have not been contacted by anyone concerning the case * * *."

Mr. Soper's secretary was present at the meeting between defendant and Soper and corroborates his testimony in a general way.

Defendant also told Mr. Soper that he had previously been to the office of Mr. Kelley, the incoming county attorney. Soper gave him to understand he (Soper) would not dismiss the charges against Stanfel and Robinson and defendant went his way. Kelley had already refused to have anything to do with it.

██ I. Section 723.1, Code, 1946, under which defendant was informed against provides, so far as pertinent here, as follows:

"Interference with administration of justice. If any person attempt in any manner to improperly influence, intimidate, impede, or obstruct any * * * officer in any civil or criminal action or proceeding * * * or any officer in, or of, any court or tribunal in relation to any cause or matter or proceeding pending in, or that may be brought before, such court or tribunal * * * in regard to which such officer is, or may be, required to act in his official capacity, or, if any person shall intentionally * * * attempt to improperly influence, obstruct, or impede the due administration of justice or the actions or conduct of any such * * * officer, he shall be punished * * *."

The original information charged defendant merely with the crime of "interference with the administration of justice" without stating what he did or giving any details of the alleged crime. The details were contained in the "minutes of evidence" accompanying it. The court overruled defendant's application for bill of particulars and demurrer to the information. These rulings are assigned as error here. Had the trial then gone forward on that information we would now be confronted by the necessity of ruling on the correctness of those decisions and on defendant's further contention that if the information, as drawn, was to be held sufficient under the statute, the statute itself would be invalid as violative of section 10 of Article I, of our State Constitution, and of the Fourteenth Amendment to the Constitution of the United States.

However, defendant was not tried under that information. Amendment was allowed upon proper notice. The amendment gave the names of the then pending criminal proceedings against Stanfel and Robinson and charged that defendant interfered

with the administration of justice by attempting to improperly influence, intimidate, impede, or obstruct B. M. Soper, county attorney, by falsely representing to him that the witnesses could not identify Stanfel and Robinson as perpetrators of the alleged crime and would not appear as witnesses and were desirous of having the cases dismissed. We have first to determine whether the court erred in permitting such amendment. If it did not, then any question as to the rulings referred to is moot. Defendant argues that the ruling on the demurrer was an adjudication and the information could not thereafter be amended.

Six cases are cited. None of them goes to the length of holding that after a demurrer to an information is overruled the state is precluded from amending before trial. Under section 773.42, Code, 1946, amendment to an indictment may be made "to correct errors or omissions in matters of form or substance." Section 773.43 requires that, if the application for amendment be made before commencement of trial, service be made upon defendant or his attorney of the application and a copy of the proposed amendment. That was complied with in the instant case and resistance offered by defendant to the proposed amendment. These two Code sections are made applicable to county attorney's informations by Code section 769.11.

The question presented here, as applied to an indictment, was expressly reserved from the opinion in State v. Leasman, 208 Iowa 851 (at page 858), 226 N. W. 61, cited by appellant.

State v. Sexsmith, 200 Iowa 1244, 1245, 206 N. W. 100, and State v. Sexsmith, 202 Iowa 537, 538, 210 N. W. 555, are also cited. On the first Sexsmith appeal it was held that the indictment must specifically state the facts, "as distinguished from conclusions of fact and law." The case was reversed for error in overruling demurrer. Upon remand the demurrer was sustained, the trial court holding "the defects of the indictment can be remedied by either a new indictment or the filing of a county attorney's information." The county attorney thereupon filed such an information, based on the same facts as was the indictment. A plea of former judgment of acquittal was interposed and sustained and the State then appealed. 202 Iowa 537, 210 N. W. 555, supra. On this second appeal the

decision of the trial court was affirmed on the ground that resubmission to the grand jury had not been ordered under sections 13797 and 13809, Code, 1924 (now sections 777.9 and 777.22, respectively, Code, 1946).

In State v. Herbert, 210 Iowa 730, 731, 231 N. W. 318, it was held the amendment charged the accused "with an offense which is different than the offense which was intended to be charged in the indictment as returned * '* *." And in State v. Hyduck, 210 Iowa 736, 231 N. W. 451, it was held the trial court erred in refusing to strike an amendment filed without service on defendant or giving him opportunity to resist as provided by section 13745, Code, 1927 (now section 773.43, Code, 1946).

· The appellant also cites State v. Boysen, 214 Iowa 46, 238 N. W. 581. It is not in point. It merely says that the county attorney may not by a bill of particulars supply a material allegation of the indictment. We think none of these cases cited by defendant is in point.

We find no merit in defendant's contention as to the lack of authority of the trial court to authorize amendment of the information here. Section 769.11, Code, 1946, authorizes amendment to county attorney's informations "in the same manner and to the same extent that an indictment may be amended." We do not think that overruling of the demurrer made such amendment impossible if the court deemed it necessary to correct errors or omissions in matters of form or substance.

Sections 777.8 and 777.9, Code, 1946, prescribe the procedure when demurrer to an *indictment* is sustained. Under section 777.8, if sustained because the indictment shows on its face matter constituting a legal defense or bar, the judgment is final and the defendant must be discharged.

But under section 777.9, if the demurrer to an indictment is sustained on any other ground, the court, if it is shown the objection can be remedied or avoided in another indictment, may order resubmission to "the same or another grand jury." We have held that this does not authorize delegation to the county attorney of power to determine whether a new charge shall be presented after demurrer to an indictment is sustained. State v. Sexsmith, supra, 202 Iowa at page 544.

422

Manifestly section 777.9 cannot apply when demurrer to a county attorney's information is sustained. If the original charge is not by indictment it cannot be "resubmitted to the same or another grand jury." But it is also clear that if such demurrer goes to matters that can be obviated by a new information or by amendment to the original information it is not the intention or spirit of the statute that the defendant shall escape trial. If sections 777.8 and 777.9 are not applicable to prosecutions under county attorney's informations there is no reason why amendment to such informations may not be authorized under sections 773.42, 773.43, and 769.11. And even in the absence of express statutory authority, we would uphold the right of amendment to county attorney's information where defendant is afforded reasonable opportunity to make resistance and where no question of former jeopardy is involved.

In State v. Doe, 50 Iowa 541, 542, the district court, on appeal from a justice court in a prosecution on information, refused to permit the information to be amended after demurrer thereto had been sustained. On appeal to this court the decision of the district court was reversed, the opinion citing State v. Merchant, 38 Iowa 375, 377, to the proposition that "an information stands upon different grounds from an indictment, and is amendable." 1 Bishop on Criminal Procedure, section 714, was also cited, and the proposition approved that such amendment is allowable "to any extent which the judge deems to be consistent with the orderly conduct of judicial business, with the public interest, and with public rights."

We are aware the information in the Doe case was one charging a misdemeanor, triable in justice court. But the precedent has value notwithstanding. The fact that our statute has extended the office of the information to cover felonies does not change its character. In 31 C. J., Indictments and Informations, section 423, and 42 C. J. S., Indictments and Informations, section 233, it is said:

"Even in the absence of a statute, informations, not being found upon the oath of a grand jury, but filed by the public prosecutor, may be amended either in matter of form or substance by leave of court at any time before trial, even after

motion to quash, demurrer, or plea; *and the rule applies to informations for felonies under statutes allowing such mode of prosecution, although at common law prosecution by information was limited to misdemeanors.*" (Italics supplied.)

See, also, 27 Am. Jur., Indictments and Informations, section 121; Secor v. State, 118 Wis. 621, 95 N. W. 942, 944.

We hold there was no error in permitting amendment to the information, nor is there merit in the technical objections to the procedure by which the order was procured. The statutory requirements seem to have been substantially met.

II. The defendant urges that the court erred in failing to instruct, on its own motion, that the testimony of accomplices must be corroborated. Section 782.5, Iowa Code, 1946, requires such corroboration. In State v. Myers, 207 Iowa 555, 557, 223 N. W. 166, it is said the giving of such instruction in a proper case is required, even though not requested and though there be corroborating evidence in the record. State v. Carnagy, 106 Iowa 483, 76 N. W. 805, and State v. James, 198 Iowa 976, 200 N. W. 577, are cited in support of the proposition.

It is to be observed both these were rape cases and involved the statute requiring corroboration of the evidence of the person injured. Section 782.4, Code, 1946. In the Carnagy case emphasis is laid on the thought that the evident purpose of the statute is to guard against convictions based alone on the testimony of an injured party in cases where "interest and feeling are so apt to control, and the motives of revenge or sinister design so frequently exist." At page 490 of 106 Iowa, page 807 of 76 N. W.

Of course this particular reasoning is not applicable here where testimony of an accomplice is involved. In lieu of such consideration, however, a somewhat analogous one might perhaps be urged.

At any rate, without re-examining the broad statement of the rule as found in State v. Myers, supra, and even without determining whether the witnesses Summers, Rowland, and Stanfel were accomplices within the meaning of the rule, we are inclined to dispose of the question here upon another consideration.

It may be first observed that the only exception taken to the instructions (pertinent here) related to the failure to instruct as to the testimony of Summers and Rowland and not to that of Stanfel. As to the necessity of specifying the ground of complaint in exceptions to instructions, see State v. Hofer, 238 Iowa 820, 832, 28 N. W. 2d 475, 481, and cases cited.

However, we think defendant expressly waived any right he may have had to predicate error on the court's failure to instruct on the necessity of corroboration. On the last day of the trial, according to the district court record certified to us, it is shown that the court gave counsel on each side a final form of the court's instructions and allowed them reasonable time to make objections thereto. It was the court's duty so to do. State v. Holder, 237 Iowa 72, 83, 20 N. W. 2d 909, 915. But this did not require defendant to except before instructions were given. State v. Holder, supra. Neither did it require him to consent to the instructions as written. He still had the right, in motion for new trial to urge exceptions to the instructions. Section 787.3(7), Code, 1946. This does not imply, however, that the right could not be waived.

At the close of the argument the trial court asked: "Do you gentlemen desire to take any exceptions to the final draft of the instructions before they are given?" To this counsel for defendant responded, "None, Your Honor." The county attorney made similar reply.

Defendant was represented by experienced counsel and was himself an attorney. They must have known their action would lead the court to believe the instructions satisfactory to defendant. Certainly it did not indicate an intention of reserving the right to take later exceptions. We do not think defendant should be permitted thus to change his position after gambling on the verdict. He requested twenty-two different instructions without including one on the necessity for corroboration of the testimony of accomplices. He disclaimed any desire to except, and did so without reserving the right later to except.

It seems clear the defendant by his own and his counsel's conduct waived his right to assign error here for the failure so to instruct. That such right may be waived we entertain no

doubt. See 23 C. J. S., Criminal Law, section 1341, where it is said:

"Objection to instructions given may be waived by action of accused's counsel, as by his stating at the close of the charge that he is satisfied with the instructions."

The text cites various cases which sustain it though none is particularly in point here in its facts.

But on principle, aside from exact precedent, we must hold the right is one that can be waived. It is not based on any fundamental principle, either constitutional or statutory. In many jurisdictions it is held not reversible error to fail to instruct, without request, on the necessity for such corroboration. 23 C. J. S., Criminal Law, section 1325e (Testimony of accomplice, page 953).

Needless to say, in light of the evidence we have set out there is ample corroborative evidence in the record. We are convinced the case cannot be reversed on the purely technical ground here discussed.

III. Defendant requested an instruction that "if you find any witness in this case has knowingly sworn falsely in relation to any material matter or statement, then you may disregard the entire evidence of such witness * * *."

The principle embodied in the requested instruction is sound but has no application here. The request is based on the fact that the witness Summers signed the rape information against Robinson and Stanfel charging the crime as committed on "Marie Summers" instead of upon "Freeda Rowland"; also upon the fact that both Summers and Mrs. Rowland held themselves out as man and wife at the time the charges were filed.

We do not condone or excuse the conduct of these witnesses. But the subject matter of their admitted misrepresentation was entirely immaterial both here and in the charges against Robinson and Stanfel. Whether the victim of their attack was named Freeda Rowland or Marie Summers or whether she and Summers were wife and husband had nothing to do with her identity as the person attacked or with the guilt or innocence of her attackers. Nor do we find anything in their testimony

in the instant case to warrant the giving of such an instruction.

There was no error in refusing it.

█ IV. Defendant did not take the stand in his own behalf and offered no evidence except the testimony of five witnesses as to his general moral character. On rebuttal the State produced three witnesses. It is urged here that they were allowed to testify to defendant's general reputation.

A careful reading of the record convinces us that the trial court quite carefully guarded against just that situation. However, it is possible it was not entirely successful. While it is doubtful whether any reversible error resulted, even if it be held the evidence was incompetent, we prefer to meet squarely the question defendant presents, May testimony of his general good moral character, offered on behalf of a defendant who does not himself testify, be met by testimony of his general bad reputation for moral character?

There is, of course, a basic difference between the words "character" and "reputation." The distinction "roughly stated" in State v. Poston, 199 Iowa 1073, 1074, 203 N. W. 257, 258, is sound: "Character is what a man actually is; while reputation is what his neighbors say he is." If the basic meaning be too strictly insisted on, however, any testimony by one as to the real moral character of another would have to be excluded on the ground that in the very nature of things the witness cannot *know* the fact. He can at most merely express an opinion, the weight of which depends on his opportunity for observation and his own standard of morality.

It is to be remembered we are speaking here of "character" and "reputation" as bearing not on the credibility of a witness but on the probability or nonprobability of a defendant being guilty of the crime with which he is charged. For this purpose the State cannot offer any evidence unless the defendant puts the matter in issue.

When a witness testifies to the good moral character of a defendant, we have held he may be cross-examined as to whether he has not heard *rumors* or *reports* concerning the defendant's bad character *with reference to particular transactions*. State v. Kimes, 152 Iowa 240, 249, 132 N. W. 180, 184. In the last-cited case it is said, "the cross-examination related to the very

matter inquired about on direct examination, to wit, the *repute* of the defendant in the community as to good moral character." (Italics supplied.)

In State v. Poston, supra, it is said that "for some purposes" the terms "good reputation" and "good character" are "recognized as expressing the same idea." In State v. Ferguson, 222 Iowa 1148, 1161, 270 N. W. 874, 882, after stating that in some jurisdictions evidence of character as distinguished from reputation may not be shown, the opinion says:

"In this state, however, the rule seems to be otherwise, and the real character of the defendant may be shown. This may be shown, it is true, *by general reputation*, but it may also be shown by what a witness knows of the defendant from his personal observation or experience with him." (Italics supplied.)

The real issue is the character of the accused. It is tendered by him "to establish a fact upon which the presumption of his innocence may be based." State v. Sterrett, 68 Iowa 76, 78, 25 N. W. 936, 937. The good character of the defendant "may be proven by witnesses who knew his character as distinguished from his reputation, *as well as by testimony of general reputation.*" (Italics supplied.) State v. Cather, 121 Iowa 106, 109, 96 N. W. 722, 723.

If defendant may support the issue of *character* either way, i.e., by opinion testimony of qualified witnesses or by proof of general reputation, we see no reason why the State in rebuttal, may not meet the issue by either form of proof.

Our statute provides that "the general moral character of a witness may be proved for the purpose of testing his credibility." Section 622.18, Code, 1946. Under it we have held that character, as therein used, is the equivalent of general reputation. State v. Gregory, 148 Iowa 152, 126 N. W. 1109; State v. Ferguson, supra (222 Iowa, at page 1159, 270 N. W., page 881).

Many cases might be cited in which it is said the two terms are synonymous or are used interchangeably. See 6 Words and Phrases, Perm. Ed., 551 (title "Character," subtitle "Reputation"). But we think there is no real confusion of terms here. Defendant brought in issue his general moral character to sup-

plement the presumption of innocence the law accords him. It is true the proof he offered was the direct testimony of witnesses who claimed to know his character. But that did not limit the State as to the form of proof by which it might negative the tendered issue.

There was no error in admitting the evidence complained of.

V. In a final division of his brief defendant argues various matters under an omnibus assignment of error in overruling motions for directed verdict, motion for new trial, and motion in arrest of judgment.

The principal argument under this assignment questions the constitutionality of the statute under which defendant was charged and convicted. The substance of the contention is that it denies due process of law under the Federal and State Constitutions because of uncertainty in the way it defines the crime to be punished. Particular stress is laid upon the argued uncertainty of the words "attempt" and "improperly" and use of the disjunctive "or" instead of the conjunctive "and."

We are not impressed by this argument. Any statute that would purport to enumerate in detail the acts constituting "obstruction of the due administration of justice" would have limited value. The common-law crime was well established and the terms well understood. Our statute uses general but not indefinite language.

Surely the word "attempt" is not unknown to the criminal law and no one has ever argued that there should be a statute enumerating the myriad acts which under varying circumstances might constitute "attempts." Nor is the word "improperly" lacking in definiteness when applied to an interference with the administration of justice.

No difficulty confronted the court here, and we anticipate none in future cases, in determining whether a given state of facts (if established) constitutes an *attempt improperly* to "influence, intimidate, impede, or obstruct" any court or officer thereof in performing the always difficult duty of administering justice.

The use of the disjunctive "or" is not confusing either in the statute or in the information. It does not denote different

offenses. The act that constitutes an attempt is criminal whether it results in improperly intimidating, influencing, impeding, or obstructing. It may be designed to have any one or all four results. Had the conjunctive "and" been used defendant might conceivably have argued the lack of proof that all four results were intended.

Appellant cites and quotes from the opinion in Cline v. Frink Dairy Co., 274 U. S. 445, 47 S. Ct. 681, 685, 71 L. Ed. 1146, the language emphasizing that a penal statute creating a new offense must be explicit. That is, of course, true of any criminal statute but if it be one creating a new offense, e.g., the Anti-Trust Act considered in the Cline case, greater care in the use of language would be required to avoid possible vagueness.

The statute here is not entirely new though it enlarges the common-law concept of obstructing the due administration of justice. It has striking resemblance to the federal statute, Criminal Code, section 135, found in 18 U. S. C. A., section 241, the constitutionality of which seems never to have been questioned. That statute uses the word "corruptly" instead of "improperly" but we think with the same meaning. We cannot hold that the legislature used the word "improperly" in a merely ethical sense.

In Broadbent v. United States, 10 Cir., Utah, 149 F. 2d 580, 581, it is said that the word "corruptly," while "capable of different meanings in different connections," means, as used in section 135 of the Criminal Code, "any endeavor to influence a witness or to impede and obstruct justice," citing Bosselman v. United States, 2 Cir., N. Y., 239 F. 82, 86, and United States v. Polakoff, 2 Cir., N. Y., 121 F. 2d 333.

And in the Broadbent case, supra, it is said of the word "endeavor" in the same statute: "It describes any effort or essay to do or accomplish the evil purpose that the section was enacted to prevent." Surely this may stand as a sound definition of the word "attempt" in the Iowa statute.

We are of the opinion that the context here renders the words "attempt" and "improperly" clear and definite and that neither the statute nor the information as amended is open to the attack made upon it.

The arguments of counsel on both sides go far afield but we are content to limit the discussion to the statute in question here and are convinced of its validity.

■ Appellant contends there were no criminal proceedings *pending* at the time he approached the county attorney, because the cases were not in the municipal court, the defendants having been bound over, and no indictment or information was yet pending in district court. The argument is not sound. The statute says: *"pending in, or that may be brought before."* Section 723.1, Code, 1946. It is unnecessary for us to decide whether the case was technically "pending" in either court. The allegation of the information says "pending in the district court" but we find no such material variance between the allegation and proof as to constitute error.

It is our judgment the case should be and it is hereby affirmed.—Affirmed.

MULRONEY, C. J., and OLIVER, BLISS, HALE, GARFIELD, MANTZ, and HAYS, JJ., concur.