STATE OF IOWA, appellee, v. HARRY BURKE FRINK, appellant.

No. 50770.

(Reported in 120 N.W.2d 432)

MARCH 12, 1963.

REHEARING DENIED MAY 7, 1963.

Grate, Moore, Warren & Potter, of Des Moines, for appellant.

Evan Hultman, Attorney General, John Allen, Assistant Attorney General, and James D. Jenkins, County Attorney, for appellee.

LARSON, J.—When the defendant, Harry Burke Frink, estranged from his wife, tried to take their children from the home of his mother-in-law, Mrs. Hirchak, in Albia, Iowa, police were called. Officer Curtis Green was wounded, and the defendant was charged by indictment with the crime of assault with intent to commit murder. In the first trial the jury could not agree. In the second trial on May 7, 1962, the defendant was found guilty as charged, his motion for a new trial was overruled, and he was sentenced to serve an indeterminate term, not exceeding thirty years, in the State Penitentiary.

In this appeal defendant contends that the verdict is not sustained by sufficient evidence, that the court erred in giving certain instructions and in refusing certain requested instructions, and that on the record as a whole he did not have a fair trial. We find no prejudicial error.

From the record we learn that this exciting episode, which ended with a wounded officer and defendant's surrender at a blocked intersection on the northeast corner of the square in Albia, began when police officers were called to the Hirchak residence about 4 p.m. December 14, 1961. Defendant's wife had left his home in Chicago and had taken their four small children to her mother's home in Albia. It was defendant's purpose to remove the children to his aunt's home in Moulton, Iowa. His attempt to gain entrance to the Hirchak residence brought Police Officers Ronald Mock and Gerald Bates, as well as Lowell Harris, an Iowa Highway Patrolman, to the scene. While de-

fendant testified he did not recognize the police standing near his car with drawn guns pointed at him and broke out a picture window in order to escape the threat, Patrolman Harris testified when they arrived he observed Mrs. Frink running out of the Hirchak home, pursued by defendant, that he caught her and put his arm around her neck in a headlock, and that he pointed a revolver at her head and told the officers to "get out of here or I will kill her." When the officers retreated, defendant took his wife back inside the house. Later Harris observed a struggle at the front door as defendant pushed Mrs. Hirchak outside and onto the ground, where she lay until taken away by ambulance. Appellant says this struggle resulted when Mrs. Hirchak opened the front door and attacked him with a butcher knife.

Shortly after that incident, defendant and his wife, who was clutching their baby in her arms, came out of the house and proceeded toward the appellant's car, where he obtained a .22-caliber rifle. Appellant kept an arm around his wife's neck, held a gun in her back, and used her as a shield as they again retreated indoors. Defendant at this time loudly advised his wife and a large number of interested bystanders, some of whom were armed, that he had enough ammunition "to hold them off for a week." Later Mrs. Frink ran out of the house, crossed the street and told Patrolman Harris that defendant " 'is going to kill my baby.' " She was hysterical as she proceeded to the home of a neighbor.

After a while defendant with his four children came out to his car. The Appanoose County Sheriff had just arrived in a distinctively-marked car including siren and red flashing lights. At a respectful distance he asked defendant to let the children go back into the house and advised him he would not be harmed. Defendant's response was a curse and a warning that if the officer would come out in plainer sight defendant would kill him.

Pursued by the officers and others, the defendant drove to a Phillips 66 station for gas, but was unable to obtain service. As he pulled out of the station, Chief of Police Glen Derby, dressed in uniform, fired a shot at his rear tire but missed.

Defendant then proceeded to an APCO station and, when he could get no service, asked to speak to a highway patrolman. Patrolman Harris, Sheriff Bagley of Monroe County, and a Bart Downs, talked with defendant. Harris told him he could not obtain gasoline for him, Bagley asked him to drop his gun and give himself up in protection of the children, and Downs heard him threaten to shoot anyone who "takes a picture of me" after one cameraman had taken a flash picture. A pickup truck tried to block his exit from that station, and defendant fired two shots at it from his .22-caliber pistol. Defendant next drove to the town square. As he approached the northeast corner, two automobiles pulled in front of him and a sheriff's car rammed him from behind, blocking him in.

Defendant testified that when he opened his door to see where to back, this jolt from behind caused the gun in his hand to fire and that this is the bullet that struck the sheriff's car. He stated no other shot was fired by him, but upon hearing other shots nearby he feared for the children's safety, threw his pistol out the window, and gave himself up.

Officers Green and Bates, however, had a different story. Arriving at the scene in the third car to the rear, they were proceeding on foot toward defendant's car from the left rear. Each testified he saw defendant open the left door of his car from four to eight inches and fire at the sheriff's car, and then fire two shots at them.

Assigned errors are argued in five divisions in appellant's brief and argument. We shall consider his Division Five first. In it he contends the court erred in overruling defendant's motion for a directed verdict at the close of the State's evidence and again at the close of all evidence. He argues there is testimony (his) that the gun only contained six shells when he obtained it, that two were fired at the truck, one at the sheriff's car, and that Sheriff Bagley found two or three remained when the gun was later examined by him. He contends others were shooting at the time, and that they could have accidentally shot Officer Green. Conceding there was such a possibility involved in this injury, the question clearly was for the jury.

I. The rules governing our consideration of a claim

of insufficient evidence in a criminal case are so well established they need no discussion here. The evidence, of course, should be viewed in the light most favorable to the State. We do not decide disputed fact questions in such a case. That is the jury function, and its verdict is binding upon us unless we are satisfied it is without substantial support in the evidence or it is clearly against the weight of the evidence. State v. Poffenbarger, 247 Iowa 552, 554, 74 N.W.2d 585, 586, and cases cited therein; State v. Anderson, 239 Iowa 1118, 1125, 33 N.W.2d 1, 3. In State v. Miskell, 247 Iowa 678, 686, 687, 73 N.W.2d 36, 41, we said, "In a criminal action the cause should be submitted to the jury, and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge. * * * the State's evidence, with all reasonable inferences therefrom, must be taken as true and viewed in the light most favorable to the State, and it is necessary to consider only the evidence which tends to support the verdict."

Here Officer Green testified the first shot from defendant's partially opened door was directed toward the sheriff's car and the next two shots were directed at him. When the bullets hit him he said it "felt like two rocks hit me on the leg." Officer Bates testified to seeing defendant shoot at the car and saw two flashes when defendant shot at Green. The sheriff and other officers coming up the other side at the rear heard the shots. Such evidence was substantial and clearly justified the rejection of defendant's motion to direct a verdict for him.

■ II.  In his first assignment of error set forth in Division One of his brief appellant challenges Instruction No. 13 given by the trial court, contending it did not contain a correct and complete statement of the law of self-defense. It is the State's contention, and one with which we agree, that under the evidence presented there was no issue of self-defense in this prosecution, and thus the failure of the court to fully explain the law pertaining thereto was harmless.

Appellant's defense was that he did not fire the shots that injured Green, not that he was acting in self-defense at the time. Even if we consider the availability of that alternate

defense, we fail to find in the testimony any such assault upon him as would support and justify an instruction on self-defense, especially where no such instruction was requested. Here there was no single continuing assault as appears in the case of State v. Phillips, 118 Iowa 660, 92 N.W. 876, relied upon by appellant. There an officer and posse entered a railroad station with drawn guns and called out to three suspects, "Hands up! We want you", without advising them they were officers of the law, and sought to arrest them. In the resulting gun battle and chase one of the posse was fatally wounded and the trio were charged with murder. Their conviction was reversed and their resistance to that assault, although not approved, was held to be sufficiently justified as to avoid the charge of first-degree murder. The trial court there instructed the jury that if, upon reasonable information and belief of defendants' guilt, the marshal summoned an armed posse, went to the depot and made the demand, the resistance was unlawful and defendants were guilty as charged. The court's opinion then said at page 685 of 118 Iowa, "To make such rule applicable the jury should have been charged they must also find that defendants knew, or as reasonable men ought to have known, that their arrest was sought by lawful authority, and that their personal safety was not being imperiled at the hands of the arresting force."

In the case at bar appellant now argues that he was assaulted when two men whom he says he did not recognize as officers stood near his car at the Hirchak home with drawn guns as he was unsuccessfully trying to gain admittance, and that he justly feared for his safety, and all his succeeding acts, including the shooting of Officer Green, were acts of self-defense. We cannot agree with that reasoning and do not find the Phillips case authority for such conduct. This original assault, if it can be called an assault, terminated when at defendant's demand those men left. At least twice thereafter and before the shooting of Green, the defendant was asked by officers whom he recognized to give up the children. They assured him no harm would come to him. To a reasonable person it would have been perfectly clear that the officers did not wish to injure him at anytime

but were using great care and patience in trying to restrain him and avoid bloodshed. Certainly he knew that and so did not contend he shot at Green in self-defense.

It is the general rule that the giving of an instruction which is abstract, or not authorized by the pleadings and evidence, is harmless error where no prejudice results to the accused. Reistroffer v. United States, 8th Cir., Iowa, 258 F.2d 379. We are satisfied defendant did not believe himself imperiled by Green or the other officers, that there was no necessity for an instruction on self-defense, and the failure to give a full and complete instruction thereon was harmless. People v. Veitenheimer, 229 Mich. 409, 201 N.W. 475; 24B C. J. S., Criminal Law, section 1922(3). We ourselves said in State v. Alexander, 169 N.W. 657 (no Iowa report), that even though an instruction is erroneous, unless it is prejudicial to some right of the defendant it does not serve as a basis for a reversal. Instruction No. 13 did not prejudice any defendant right and is not a basis for reversal.

III. In Division Two of his brief appellant contends the court erred in giving Instruction No. 14. In it the court told the jury defendant was not told he was under arrest, but also advised that the failure to so advise him of that intent would not justify defendant in shooting the officer approaching the car, and that if he did shoot the officer the fact that he had not been told he was under arrest would not constitute a defense to this action. The instruction was correct and the court was right in rejecting a lengthy instruction requested by defendant on the same subject matter.

Section 755.7, Code of Iowa, 1958 and 1962, provides that a person making an arrest must inform the person to be arrested of his intention to arrest him, the cause of the arrest, of his authority to make it, and inform that he is a peace officer if he is one, *except* "when the person to be arrested is actually engaged in the commission of or attempt to commit an offense, or escapes, so that there is no time or opportunity to do so; * * *." These provisions must, of course, be construed as requiring only substantial compliance, and do not require strict compliance where it is impractical or futile as where the person

about to be arrested knows of the officer's intention and purpose or when the officer has no reasonable opportunity to inform him. See Nickell v. Commonwealth, 285 S.W.2d 495, 496 (Ky.); State v. Phillips, supra, 118 Iowa 660, 683, 92 N.W. 876. In 6 C. J. S., Arrest, section 6(e), it is stated, "An officer must, ordinarily, make known to the person he seeks to arrest without a warrant his authority, and the object and cause of the arrest * * * although circumstances surrounding the arrest may, in a proper case, dispense with one or more of these requirements. In accordance with this exception to the rule, an officer need not inform a person who is committing an offense in his presence, or who is pursued immediately after the offense, of the cause of his arrest; and, where an officer is met with a demonstration of force at the outset, he need not go through the formality of informing the person of his intention to arrest him or of the cause of his arrest." Also see 5 Am. Jur.2d, Arrest, section 24.

Under the evidence presented by both parties it appeared appellant, in the presence of the officers, made a determined effort to get into the Hirchak residence, broke a window, assaulted Mrs. Hirchak, and after he got inside armed himself with a pistol which he threatened to use against several persons before he finally did use it and was taken into custody. He realized he was being pursued by officers at the gas stations and talked to them from a distance. He was advised by the sheriff "to drop his gun and give himself up in protection of the children." He did not do so but continued his efforts to escape. Under these circumstances we must hold that the formalities of informing the accused of the intention to arrest him and give him the cause therefor seem unreasonable and not required. The assignment is without merit.

Appellant cites two cases as authority for his proposition that the officers were under a duty to advise him as to their identity and the cause of the attempted arrest. State v. Fador, 222 Iowa 134, 268 N.W. 625, and State v. Rowe, 238 Iowa 237, 26 N.W.2d 422. Neither aid him, for, while stating the rule that it must appear defendant knew or as a reasonable man must have known that his arrest was sought by lawful authority and that his personal safety was not being imperiled, it is also true that under some circumstances, as where the accused person

is fleeing from the officer or is making active resistance, these formalities need not be strictly observed. Clearly, resistance of defendant here could not be justified on any of the grounds approved in those cases.

IV. In explaining to the jury its purpose in admitting testimony as to the events preceding the actual shooting as charged in the indictment, the trial court told the jury in Instruction No 12: "Testimony as to the proceedings and occurrences previous to the shooting of Curtis D. Green has been admitted for the purpose of showing that a public offense had been committed for which a lawful arrest should be made, and as tending to show the defendant's disposition toward the commission of the crime charged in the indictment."

Appellant claims the instruction contains erroneous statements of the law, invades the province of the jury, and is prejudicial. While the instruction might have been more carefully worded, we are not convinced it misled the jury to the extent of telling it a public offense had been committed for which a lawful arrest should be made. We think it is sufficiently clear the court was telling the jury it admitted that evidence to show defendant's acts, acts which tended to prove he had committed public offenses for which an arrest without warrant should be made, and nothing more.

Section 755.4, Code, 1958, 1962, provides: "A peace officer may make an arrest * * * without a warrant: 1. For a public offense committed or attempted in his presence. * * *." The evidence the court referred to shows almost without conflict many acts in the presence of officers which could be classified as public offenses and which would justify his arrest. They previously have been enumerated. We are satisfied the jury understood the instruction to go no further, and that no prejudice was suffered by the giving of that instruction.

V. In Division Four appellant assigns as error the giving of Instruction No. 17 which told the jury that the defendant had admitted he had been convicted of a felony, that "A witness may be impeached by showing that he has been convicted of a felony, and when a witness or a party has been so impeached you may disregard his testimony, except where it is corroborated by other credible evidence or the facts of the case, if it is so cor-

roborated. But you are not bound to disregard such testimony, and should not do so where you believe, if you do, from all the evidence, and facts and circumstances shown in the evidence, said evidence is true. The weight to be given to the testimony of any witness is to be determined by the jury." The court rejected a requested instruction which emphasized the youth of defendant and the time lapse since his conviction, and properly so, for it has no direct bearing on present credibility.

We are satisfied the court's instruction was adequate and correct. In State v. Stout, 247 Iowa 453, 460, 74 N.W.2d 208, we approved a very similar instruction and referred to State v. Van Vliet, 97 Iowa 387, 389, 66 N.W. 748, where a like instruction was upheld. Section 622.17, Code, 1958. Although we indicated in State v. Stout that a defendant could, if desired, request further clarification of such an instruction, we find the necessary substance in defendant's request was given the jury and that it was not error to refuse the remainder. State v. Katz, 241 Iowa 115, 40 N.W.2d 41.

VI. Perhaps under these circumstances the verdict and judgment seem a bit severe, and a father's misdirected concern for his children should have been given greater consideration. However, the jury thought otherwise, and we have carefully gone over the entire record, including all the court's instructions, and conclude the defendant had a fair trial. Finding no reversible error in this record the judgment must be affirmed.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.