STATE OF IOWA, appellant, v. DAN KURTSINGER MILLER, appellee.

No. 51889.

MAY 3, 1966.

REHEARING DENIED JULY 13, 1966.

Lawrence Scalise, Attorney General, and David P. Miller, County Attorney, for appellant.

Dennis J. Britt, of Davenport, for appellee.

SNELL, J.—This case is before us following a conviction of murder in the second degree. The State appealed from adverse rulings excluding evidence. Defendant appealed from all adverse rulings and the final judgment. The State's appeal is important only in the event of remand for new trial. We will first consider defendant's appeal.

On February 23, 1965, there was filed an information charging defendant with the crime of murder committed on or about the 31st of October 1965.

To this information defendant demurred on the ground no

offense was alleged in that the date of the alleged offense was impossible.

The demurrer was sustained. A new information was then filed alleging October 31, 1964, as the date of the offense. To this information defendant entered a plea of former acquittal. The plea was overruled. Upon agreement of the court, and all parties that the right to raise the question on appeal would not be jeopardized, the defendant entered a plea of not guilty.

I. The second information against defendant, after the demurrer to the first information was sustained because it referred to an impossible date, did not place defendant in double jeopardy contrary to Article I, section 12, Constitution of the State of Iowa. See State v. Smith, 88 Iowa 178, 55 N.W. 198.

The first information referred to a date that had not yet arrived. The defect was clearly a typographical error. It could have been corrected by amendment. Sections 773.42 and 773.43, Code, 1962. It did not contain matter which is a legal defense or bar to indictment or information requiring discharge of defendant under Code section 777.8.

The sustaining of the demurrer did not constitute a final judgment of the charge against defendant.

II. Code section 777.9 provides the court may order resubmission to a grand jury when a demurrer to an indictment has been sustained.

Defendant argues the second information was not ordered by the court, there was no compliance with the statute and consequently further prosecution was without authority.

We do not agree. Here the charge was by information, not by indictment. The defendant's contention is answered in State v. Hartung, 239 Iowa 414, 422, 30 N.W.2d 491:

"Manifestly section 777.9 cannot apply when demurrer to a county attorney's information is sustained. If the original charge is not by indictment it cannot be 'resubmitted to the same or another grand jury.' But it is also clear that if such demurrer goes to matters that can be obviated by a new information or by amendment to the original information it is not the intention or spirit of the statute that the defendant shall escape trial."

III. It was established by the evidence and admitted by defendant that the victim, whose death resulted in the charge against defendant, died of a gunshot wound.

■ Defendant assigns error in that the trial court admitted three color photographs of decedent's dead body. The prosecution did not claim defendant fired the fatal shot or was present when it was fired. It claimed he aided and abetted the murder and was subject to prosecution under Code section 688.1. In this situation defendant contends the three color photographs would serve no useful purpose, i.e., they were irrelevant. Photographs are admissible in criminal prosecutions where proper foundation has been laid. State v. Estrella, 257 Iowa 462, 467, 133 N.W.2d 97, 100; State v. McClain, 256 Iowa 175, 183, 125 N.W.2d 764. The photographs were corroborative of what the witnesses had described and would ordinarily be admissible. Admission of the photographs here complained of did not constitute reversible error. See State v. Heinz, 223 Iowa 1241, 275 N.W. 10, 114 A. L. R. 959.

IV. Decedent, Walter Adams, was found in a dying condition in an alley in Davenport, Iowa, about 10:15 p.m. Subsequent autopsy indicated he had been shot through the heart with a .22 caliber bullet. His truck was parked nearby. His brother, a fireman, was called to the scene. A search of the body and the truck was made but the keys to the truck were missing.

The State at trial claimed defendant aided and abetted one Sharon Hildebrand who allegedly did fire the fatal shot.

State's evidence disclosed this defendant had been employed by decedent, Adams, during August, September and October. Prior to October 30, 1964, defendant had been living in Clinton, Iowa. His landlady, Mrs. Betty Ann Collier, testified Miller lived there with Sharon Miller (also identified as Sharon Hildebrand), "supposedly his wife"; he was employed by decedent at the time he was living in Clinton; Adams paid the rent on the apartment.

On October 30 defendant and Sharon vacated the apartment in Clinton. They spent the night in a motel and the next morning proceeded by bus to Davenport, arriving in the afternoon. Later the same afternoon Sharon Hildebrand, in company with defendant, purchased a cheap Rohm .22 caliber pistol and bullets

at a pawnshop in Davenport using defendant Miller's driver's license for identification. The address of the vacated Clinton apartment was given at the time purchase was made. Defendant and Sharon subsequently registered at a hotel in downtown Davenport.

On the night of the fatal shooting decedent was with an employee, Gene Dynes, at his home in Davenport at approximately 9 p.m. His sister took a phone call for him, identified a woman's voice and called him to the phone. He talked on the phone a few minutes. After the phone call his manner appeared normal. He stopped to say something to his father. At that time he appeared somewhat nervous, spoke to his sister, made another phone call and then left the house. He was next observed in a dying condition in the alley in downtown Davenport.

The immediate police investigation, coupled with the Federal Bureau of Investigation technical analysis, disclosed decedent had a bruise on his right arm just above the elbow which the physician thought was caused by a bite. The bullet recovered from the body had markings sufficient to identify it as having been fired by a cheap foreign make revolver, but insufficient to allow positive identification of the make of the revolver or the identical weapon from which the bullet had been fired. Cortland Cunningham, examining expert from the F. B. I., stated the bullet could have been fired from any one of 500,000 guns now in the United States, including a Rohm .22 caliber weapon. The area around the bullet hole in the clothing was microscopically examined and chemically tested for the presence of gunpowder residue. None was found.

On November 3, three days after the killing, defendant Miller was arrested in Louisville, Kentucky, while driving the 1953 Ford pickup truck owned by decedent, as the result of a report the vehicle had been stolen. Sharon (Miller) Hildebrand was arrested in Louisville shortly thereafter. They were returned to Davenport November 6, 1964.

Much of the additional testimony connecting defendant with this crime, admitted by the trial court and about which controversy revolves, was given by Detective Sergeant Iversen over objection by defense counsel. It consisted of recitation of two oral statements taken from defendant November 6, 1964.

The two stories varied in several details. The time lapse between the taking of the statements is not shown.

First, defendant Miller told Detective Iversen he and Sharon came to Davenport from Clinton via bus on October 31, arriving at about 2 p.m. They walked around and did some shopping, ate at a local restaurant and went to a show. After the show they viewed the Halloween parade, and after the parade went to a tavern where he had a couple of beers but Sharon did not drink. He stated that at no time during the day did Sharon use the telephone in his presence. After leaving the tavern they walked down the street and subsequently made their way to another tavern which was about to close as it was then 11:45 p.m. They went to the bus depot to see about buying tickets for Kentucky, his home state. As he came out of the tavern he observed Walter Adams' truck which was parked parallel to the alley alongside the Central Fire Station, headed north. He then left Sharon at the bus depot, went to see some person named Gamble, failed to locate him and returned to Sharon at the bus station. He went out and got the truck. The keys were in the truck at that time and there was a man coming down the alley, carrying a bag. He picked up Sharon, they rode around awhile and finally decided to go to Kentucky. He tried to talk Sharon out of it because of her condition, but she said she would go anyway or would follow him.

In the second statement defendant told Detective Iversen about leaving Clinton, staying in a motel overnight on October 30, coming to Davenport by bus, shopping in Davenport and then going to a pawnshop where Sharon purchased a revolver and bullets. He showed his driver's license to the man who sold the gun to Sharon and took the gun and bullets into his possession after they left the loan company. They then went to a show, later had a beer and then registered at the Columbia Hotel, went up to their room where they stayed awhile. Later they came to the Griddle Restaurant. While at this restaurant Sharon borrowed a dime from him and made a phone call. He overheard Sharon say over the telephone: "Is Walt there." He went out to the street where he subsequently talked to Sharon who stated: "I'm sorry. We have to go down—I've got to meet Walt in front of the ABC Pool Hall, but I told Walt you weren't

going to be around." Then he walked to the ABC Pool Hall with Sharon and continued down the street alone. While he was walking around he saw Walter Adams' truck go by. He did not know whether Adams was driving the truck or not. He then went into John and Joe's tavern where he had a whiskey and 7Up. When he came out he saw the truck parked at the bus depot. He then went into another tavern and had a couple of beers and at that time thought Sharon was gone too long. He went out of the tavern, walked toward the bus depot and met her as she was coming back, then they went upstairs to their hotel where they remained 20 or 30 minutes. He observed that Sharon's hair was mussed and her hand was reddened and asked her what had taken place but she would not tell him. He then told Sharon he was going out for a few minutes. He walked to the tavern where he had a beer and stayed until about ten minutes to twelve. He left the tavern and observed the truck by the bus depot, but it had been moved. He went back to the room where Sharon gave him the keys. He asked, "Why didn't he bring the truck—why didn't he bring his car?" and Sharon said, "Well, his two cars are laid up, and that's the reason he brought the truck." He stated when he got the keys from Sharon he went out, got the truck after checking out, walked over, got into the truck, a man with a paper sack was there at that time and was looking at him.

He picked up Sharon, they rode around awhile and finally decided to go to Louisville, Kentucky. He tried to talk Sharon out of it, but she stated she was going with him. On the trip to Louisville he needed some money and sold something.

The foregoing testimony was admitted before the jury. A great deal of evidence was suppressed on objections and motions by defense counsel. The State made several offers of proof which were rejected.

■ V. All proffered testimony of Detective Captain William C. Petersen of the Davenport Police Force, and of Detective Robert Gutman of the Louisville Police Department was suppressed. Further, all evidence by any witnesses concerning the discovery, testing and introduction into evidence of a .22 caliber revolver was suppressed. The State claims error.

The assignments of error by both the State and defendant

are bottomed on rulings made after extensive voir dire hearings. The procedure has been approved in State v. Holland, 258 Iowa 206, 214, 138 N.W.2d 86, 90, 91.

VI. Defendant questions the admissibility of Detective Iversen's testimony relative to defendant's oral admissions. The first objection is that no minutes of evidence concerning this testimony *by this witness* were served on defendant. The defect noted by defendant was that the witness who was to testify to this information was Detective Petersen, not Detective Iversen. Since Detective Petersen's evidence was suppressed, State offered the challenged evidence through Detective Iversen. As to material contained in the second portion of Detective Iversen's testimony, i.e. the story in which defendant stated he was with Sharon Hildebrand when the gun was purchased, heard her say "is Walt there" on the phone, etc., the evidence had been clearly delineated in the Supplemental Bill of Particulars.

The testimony by Captain Petersen regarding the first conversation with defendant outlining the same general story with certain deviations was not admitted. The State challenges the suppression of this evidence. We are not here concerned, however, with the correctness of this ruling except to note that prior to trial defendant knew the substance of what the State would try to prove, and the names of witnesses to be called.

The information, pretrial notices of testimony and Bills of Particulars stated the names of witnesses, what would be offered as testimony, copies of written statements signed by defendant, and that "the defendant admitted in a statement to two Davenport, Iowa, Police Detectives, certain facts relating to the circumstances of the murder of Walter Adams * * *."

Defendant's challenge is under section 780.10, Code, 1962: "Notice of additional testimony. The county attorney, in offering the evidence in support of the indictment * * *, shall not be permitted to introduce any witness who was not examined before a committing magistrate or the grand jury, and the minutes of whose testimony were not presented with the indictment to the court, unless he shall have given to the defendant, or his attorney of record if the defendant be not found within the county, a notice in writing stating the name, place of residence, and occupation of such witness, *and the substance of*

*what he expects to prove by him on the trial,* at least four days before the commencement of such trial." (Emphasis supplied.) An information is, for this purpose, treated in the same manner as an indictment, sections 769.4 and 769.5, Code, 1962.

The defendant knew that Detective Iversen would be called to testify as to conversations with defendant. The defendant knew that Captain Petersen would be called to testify as to conversations with defendant. The defendant knew what the police claimed defendant had said. The fact that Detective Iversen's testimony covered some matters the State had expected to prove by Captain Petersen was not (if otherwise admissible) so violative of the statute as to constitute reversible error. It was not such an injection of entirely new matters of substance as to require reversal. The testimony did indicate defendant had told different stories but there is not the slightest suggestion of any coercion, pressure or involuntariness in obtaining the statements.

In State v. Powell, 237 Iowa 1227, 1248, 1249, 24 N.W.2d 769, we said:

"We think the minutes were rather brief and too broad a statement of the subject matter of his testimony, but the objection made at the trial when he was called as a witness was as to his giving any testimony because of the insufficient minutes. Mere brevity of the minutes would not prevent his testifying. State v. Van Vleet, 23 Iowa 27. And his testimony was within the subject matter of his observations and the statements he heard various parties make.

"\* \* \*

"We have, in a long line of cases, held the State is not limited to the minutes or notice in its examination of witnesses. State v. Harding, supra, 204 Iowa 1135, 216 N.W. 642; State v. Thom, 236 Iowa 129, 17 N.W.2d 96."

While under our previous pronouncements the situation here was not vulnerable to successful challenge we suggest to prosecutors that from an abundance of caution, and so there can be no claim of unfairness, the substance of what the State expects to prove by respective witnesses be furnished.

VII. Defendant's second objection to Detective Iver-

sen's testimony is that admissions were obtained while defendant was without counsel.

Detective Iversen testified he advised defendant of his constitutional right to a lawyer and his right to remain silent, and whatever he said could be used against him, and that defendant knew the attorney representing Sharon Hildebrand.

Defendant on voir dire examination testified:

"I recall a conversation with Detective Sergeant John Iversen on or about November 6, 1964, in the Davenport Police Department. At that time I recall that Detective Iversen told me that I had a right to consult with counsel before making any statement to him. He asked me if I wanted to call an attorney, and I told him it wouldn't do no good for me to call one because I didn't know none because I was new around this neighborhood and that I didn't have enough money to even hire one. I don't remember whether Detective Iversen made any response to me at that time with regard to an attorney. I had maybe five, six, seven dollars, something like that at that time. * * *

"I was advised of my right to remain silent. There were no promises, threats, inducements, trickery or deceit used and I talked freely and voluntarily.

"I remember in the latter part of November, but I don't remember the exact date, that I talked to Captain Petersen. * * *

"I voluntarily spoke to Captain Petersen at that time. No promises, threats, tricks, or inducements were used at that time. I was not struck or drugged and I spoke freely and voluntarily. This conversation was at my request."

We have never held that under such circumstances statements made by an accused were inadmissible.

Defendant in his brief says:

"The defense admits that its proposition in this section of the brief goes further than the Iowa law on the subject and even the decisions of the United States Supreme Court. We do, however, submit that this situation is a logical extension of the holding in Escobedo v. Illinois, supra, and the cases subsequent thereto in the various Courts of Appeal."

In State v. Myers, 258 Iowa 940, 140 N.W.2d 891, we considered statements made without the aid of counsel and refused

to extend the Escobedo rule to the extent requested by counsel here.

In State v. Myers we referred to United States ex rel. Russo v. New Jersey, 351 F.2d 429 (3 Cir. 1965), and rejected its application to situations such as we have here. Such an extension of the rule has been rejected by many jurisdictions including New Jersey.

The Supreme Court of New Jersey in State of New Jersey v. Coleman, 46 N. J. 16, 38, 214 A.2d 393, 404, decided November 8, 1965, extensively reviewed the authorities including Russo. It was a murder case involving the admissibility of statements made in the absence of counsel. The court said: "As we read the record and under our consistent interpretation of Escobedo, there was neither injustice nor constitutional violation in the admission of the defendant's statement here into evidence." We adopt this quotation as applicable to the case at bar.

For analysis of admissibility of statements see also State v. Leiss, 258 Iowa 787, 140 N.W.2d 172.

VIII. Defendant was arrested in Louisville, Kentucky. He was returned to Davenport on November 6 on a larceny charge incident to decedent's truck. The time does not appear. As indicated, supra, he was interrogated by the officers and made some statements that day. He was taken before a magistrate on the morning of November 7. There is no claim by defendant there was any undue or prejudicial delay or any coerced statements obtained in the meantime.

Defendant's brief makes no complaint about any delay. We are not prepared to say that where there has been warning such as was admitted here and defendant talked voluntarily there was error in admitting his statements because counsel had not yet been appointed.

Section 757.7, Code of Iowa, requires that a defendant when arrested must be taken before a magistrate without unnecessary delay. Defendant here was taken before a magistrate the next morning. Defendant apparently did not feel abused. He never made any complaint. There was no such unnecessary delay as to require reversal. State v. Williams, 245 Iowa 494, 502, 62 N.W.2d 742; State v. Tharp, 258 Iowa 224, 232, 138 N.W.2d

78, 82, and State v. Hodge, 252 Iowa 449, 458, 459, 105 N.W.2d 613.

IX. Defendant contends a verdict of acquittal should have been directed by the court because of insufficient evidence to sustain a conviction. We do not agree.

The evidence was entirely circumstantial but extensive and ample. We have considered the entire record but amplification of the details here would serve no useful purpose. The court properly instructed the jury that the facts and circumstances relied on must not only be established beyond a reasonable doubt, but must be inconsistent with any other reasonable hypothesis. When the evidence is viewed in the light most favorable to the State a jury question was presented. We do not decide disputed fact questions in such a case. State v. Frink, 255 Iowa 59, 64, 120 N.W.2d 432.

X. The State appealed from adverse rulings excluding the testimony of Detective Captain Petersen of the Davenport Police Department, Detective Gutman of the Louisville, Kentucky, Police Department, and the evidence relating to admission of a .22 caliber revolver.

As we have concluded the case should be affirmed on defendant's appeal the questions raised on State's appeal are moot. The questions are not of sufficient academic importance to the bench and bar to justify undue extension of this opinion.

The case is—Affirmed.

GARFIELD, C. J., and LARSON, MOORE and STUART, JJ., concur.

BECKER, THORNTON, MASON and RAWLINGS, JJ., dissent.

BECKER, J.—I dissent.

This case should be reversed on the basis of defendant's third and fifth statement of errors, to-wit:

III

"That the Court erred in allowing the witness John O. Iversen to testify over defendant's objection with regard to the conversation with the defendant on November 6, 1964, when the State had failed to provide

any minute of testimony as to such a conversation."

V

"That the Court erred in allowing the witness John O. Iversen to testify as to conversations with the defendant on the ground that the defendant was unable to consult with an attorney prior thereto."

I. Detective Iversen was allowed to testify concerning admissions made to him by the defendant. No hint of any such conversations between defendant and Detective Iversen is shown in the minutes of evidence or the bill of particulars. As to the second of the two conversations or admissions, the record indicates that this conversation was detailed in the supplemental bill of particulars and was referred to as evidence which would be produced through Detective Petersen. The fact that Detective Iversen (Detective Petersen's testimony having been rejected on other grounds) testified to this conversation would not necessarily constitute reversible error. Notice of the substance of the testimony was given.

However, Detective Iversen testified to two conversations, two sets of admissions, when the bill of particulars and all notices of additional testimony referred to only one conversation and are entirely silent as to the other. The majority holds "We are not here concerned, however, with the correctness of this ruling except to note that prior to trial defendant knew the substance of what the State would try to prove, and the names of witnesses to be called. * * * The defendant knew what the police claimed defendant had said." These statements are simply not supported by the record. The point of one of defendant's major complaints is the defendant only knew one half of what the police claimed defendant had said.

The pretrial documents contained no reference whatsoever to the fact that the State would claim defendant told two materially divergent stories. We need not belabor the importance of this information. The fact that the State produced evidence that defendant told two different versions of what happened is strongly relied upon in this court by the State in urging the sufficiency of evidence to sustain conviction. Although the final arguments of counsel are not a part of the record, presumably this evidence was also strongly relied upon at trial. No hint of

this deviation, or as the State puts it here, these "lies", was given in the pretrial documents.

Section 780.10 is fully set out in the majority opinion. It requires that notice be given of "the substance of what he [prosecutor] expects to prove by him [the witness] on trial", as to all witnesses where the minutes of evidence were not presented with the indictment to the court.

We are cited a long line of cases holding that the State is not limited to the minutes and notices in the examination of its witnesses. The history of this statute indicates the paucity of lip service given to it by this court. Even before State v. Kreder (1892), 86 Iowa 25, 26, 27, 52 N.W. 658, this court refused to force the State to comply with the law in relation to this statute. But in Kreder this court recognized that the statute meant what it said:

"But the statute requires that the substance of what the state expects to prove by the witness be stated. That provision refers to the matter to which the witness is expected to testify, and not to its legal effect. If the notice in this case was sufficient, the requirement that such a notice shall state the substance of the testimony to be given is without force. The rule of interpretation, as applied to statutes, requires that effect be given to every part of them when that can be done; and as it is not only practicable, but most reasonable, to apply that rule to the statute under consideration, we must hold that the notice in question was not sufficient, and that the witnesses therein named should not have been permitted to testify against the objection of defendant."

One of the earliest cases points up the division of the court when it failed to enforce the statute in a reasonable manner. In 1864 Justice Wright wrote in State v. Bowers, 17 Iowa 46, 50, 51:

"The law requires that the names of all the witnesses examined before the grand jury, shall be presented with the indictment, and filed §4785. In offering evidence in support of the indictment, the district attorney is not permitted to introduce any witness who was not examined before the grand jury, and the minutes of whose testimony was not taken by the clerk

and presented with the indictment, unless he shall give notice, &c §4786. (Per Lowe and Cole, JJ.)

"I am instructed to announce as the opinion of a majority of the members of the court present, and deciding this case, that under these sections the State is not limited to the testimony given by the witnesses before the grand jury, but that if his name is indorsed on the indictment, and the minutes of his testimony properly presented and filed, he may be examined as to any and all matters within his knowledge, touching or bearing upon the prisoner's guilt or innocence. The argument is that the statute requiring a return of this testimony is an innovation upon the rules heretofore existing in our criminal practice, that the language refers to the *witness* and the presentation of the testimony given by him *before the grand jury*, and does not exclude anything else he may know or recollect on the subject. And this view it is insisted is supported by the very words, 'he shall not introduce any witness,' whereas, if the prisoner's position is correct, the language would have been, 'he shall not introduce any *testimony*, the minutes of which was not taken,' &c. And that, as the State cannot introduce any other without notice, it may examine fully as to all matters, the witnesses thus made competent.

"Any other view it is further maintained is unwarranted by the letter of the law and would tend almost necessarily to defeat many if not all prosecutions.

"I feel bound to say for myself, however, that this view is neither conclusive nor satisfactory. It seems to me that the object of requiring the testimony to be returned with the indictment, would thus in very many instances be practically defeated.

"The defendant has a right to examine it, and to a copy of it without charge. And thus he knows not only the witnesses against him, but the substance of their testimony. But he cannot know this if a witness may, as in this case, testify to matters 'material to his conviction and of which he did not speak before the grand jury.' I do not claim that the witness is to be confined to the words or necessarily to the same conversations, acts, or transactions referred to before the grand jury. But that if he refers to new and substantial facts, new matter, material and admitted to be necessary to the conviction, he is within the

meaning of the law a new witness. That the witness *and his testimony* are the same under the statute, and that the one, no more than the other can be introduced without notice."

Other cases took the same view. Kreder attempted to recognize the statute. Then the whole matter was reviewed in 1895, State v. Harlan, 98 Iowa 458, 460, 461, 67 N.W. 381:

"Section 4293 of the Code, which requires that the minutes of the testimony of the witnesses upon which an indictment has been found must be returned with the indictment, and the provision of section 4421, requiring notice to be given of the introduction and examination of witnesses not examined before the grand jury, are for the purpose of imparting to the accused such knowledge of the evidence which will be given against him as will enable him to make proper preparations to contradict or explain it. *State v. Rainsbarger*, 74 Iowa 196 (37 N.W. Rep. 153). *Notwithstanding this is the purpose and object of the statute*, it was long since determined by this court that the witnesses who were examined before the grand jury, and the minutes of whose testimony were returned with the indictment, may be examined on other questions of fact in the case than those stated in the minutes of the testimony returned with the indictment. *State v. Bowers*, 17 Iowa 46; *State v. Ostrander*, 18 Iowa 435; *State v. McCoy*, 20 Iowa 262. And the same rule has been adopted with reference to the notice given of the examination of witnesses who were not examined before the grand jury; that is, the examination is not to be limited to the matters stated in the notice. *State v. Craig*, 78 Iowa 637 (43 N.W. Rep. 462). *And see State v. Yetzer*, 97 Iowa 423 (66 N.W. Rep. 737). It was held in the case of *State v. Kreder*, 86 Iowa 25 (52 N.W. Rep. 658), that a notice of the introduction of witnesses, which stated that it was expected to prove by said witnesses 'that the nuisance has been kept and maintained by you, as charged in the indictment,' did not state facts sufficient to entitle the state to examine the witnesses on the trial of the case. In that case there was not even an attempt to give the defendant notice of time, place or circumstance which would enable him to discover what was expected to be proven by the witnesses. The notice in this case is somewhat different. It surely was not necessary to state the time or place of the arrest.

And the attention of the defendant was directed to what he did and said on that occasion. It is true, that the language and character of the acts are not set out in the notice. But there is sufficient to direct the defendant's attention to them, and to enable him to produce other witnesses, if any, who were present, to explain his acts and what he said, or to contradict the witnesses for the state, if they did not testify truthfully. As is said in *State v. Rainsbarger,* supra: *'If the state was required to produce evidence conforming in every important particular to the notice, the statute would defeat justice when a non-compliance in unimportant matters would not prejudice the rights of the accused.' In view of the construction which this court apparently was compelled to give to both of the sections of the Code herein considered, in order that the administration of justice might be maintained and not defeated, we think the district court did not err in overruling the objection to the examination of the witnesses."* (Emphasis supplied.)

The foregoing quotation is a reasonable review of the court's attitude to that time. It consigns State v. Kreder, supra, to limbo without overruling it. It recognizes the purpose and object of the statute but refuses to enforce it "in order that the administration of justice might be maintained and not defeated." Here *administration of justice* seems to be equated with *record of convictions.* Notice need not be given as to *important matters* lest failure to give notice in *unimportant matters* "defeat justice."

Subsequent cases have continued what amounts to judicial repeal of a legislative enactment to the point that such objections are brushed aside almost casually in the manner of State v. Powell and State v. Harding, both noted in the majority opinion.

A review of the cases on this subject indicates persistent efforts by defense counsel to secure their client's statutory rights. Such review also reveals an equally persistent and constant refusal by this court to afford defendants the rights accorded to them by the legislature.

Admission of testimony, the substance of which was not fairly alluded to in the pretrial documents, violates the statute; just as the admission of evidence secured by illegal search and

seizure violates the constitution. The difference is that the latter protection is afforded by the Federal Constitution and the United States Supreme Court could, and finally did, do something about it. Here the right (and protection) is afforded by the legislature of the State of Iowa. If the right is to be recognized and given a meaning, this court must recognize its own responsibility to follow a constitutionally valid statute. Notice in minute detail is not necessary, but the substance is required. This was Justice Wright's point in 1864. His view was correct then and it is correct now.

We function under an adversary system. Failure to abide by procedural rules reasonably promulgated by statute can only mar the tradition of fair jury trials. I would follow the statute and reverse on this ground.

II. Defendant's next objection to Detective Iversen's testimony is that admissions were obtained while defendant was without counsel.

Detective Iversen testified he advised defendant of his constitutional right to a lawyer and his right to remain silent at eight o'clock on November 6, 1964. Later on cross-examination he refers to that conversation as having occurred in the morning. He further testified: "I think he did know something about an attorney, and if I'm not mistaken, I think he mentioned about Mr. Kelly, because at that time when this other deal—I think the subject had Mr. Kelly at that time he was apprehended with another party." * * *

"Q. * * * Do you recall whether or not the defendant stated to you on that morning that he didn't have any money to employ counsel? A. Just as I say, he possibly could have said it."

Defendant on voir dire examination testified: "I recall a conversation with Detective Sergeant John Iverson on or about November 6, 1964, in the Davenport Police Department. At that time I recall Detective Iversen told me I had a right to consult with counsel before making any statement to him. He asked me if I wanted to call an attorney, and I told him it wouldn't do no good for me to call one because I didn't know none because I was new around this neighborhood and that I didn't have enough money to even hire one. I don't remember

whether Detective Iversen made any response to me at that time with regard to an attorney. I had maybe five, six, seven dollars, something like that at that time. Neither Detective Iversen or anyone else told me that they could secure an attorney for me to consult with at that time. I did not think at that time that I could have secured the services of an attorney. If I could have, I would have liked to talk to an attorney at that time."

Defendant was returned to Davenport, Iowa, sometime on November 6, 1964. Although the hour of his return does not appear, the record fairly indicates he arrived sometime before 8 a.m. He signed a two-page, single-space statement at 6 p.m., November 6. Between times he was interrogated by both Detective Petersen and Detective Iversen. The statement was signed in the presence of Officer Charles Wright and Detective Richard Fee. The account of Detective Iversen indicates extended statements, if not interrogation.

No reason is advanced for failure to take this prisoner before a magistrate without unnecessary delay upon his return to Davenport. The crime was committed on October 31; defendant was apprehended in Kentucky on November 3; returned to Davenport sometime before 8 a.m. November 6; defendant was not taken before a magistrate until November 7. Preliminary stages of the investigation had passed. Iowa Code provides:

"757.2 If the offense stated in the warrant be a felony, the officer making the arrest must take the defendant before the magistrate who issued it at the place mentioned in the command thereof, or, in the event of his absence or inability to act, before the nearest or most accessible magistrate in the county in which it was issued."

"757.7 In all cases the defendant, when arrested, must be taken before the magistrate or clerk without unnecessary delay, and the officer must at the same time deliver to the magistrate or clerk the warrant, with his return thereon indorsed and subscribed by him and with his official title."

These sections provide important safeguards to the citizenry and must be observed. See McNabb v. United States, 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819, for interpretation of like Federal Rules. Had the officers themselves complied with the

law, the situation which developed over the defendant's right to an attorney and the officer's inability to furnish him with an attorney would not have occurred.

Upon being taken before a magistrate the defendant would then and there have had counsel appointed for him under the doctrines laid down in Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed.2d 799, 93 A. L. R.2d 733; White v. Maryland, 373 U. S. 59, 83 S. Ct. 1050, 10 L. Ed.2d 193; Hamilton v. Alabama, 368 U. S. 52, 82 S. Ct. 157, 7 L. Ed.2d 114.

The majority quotes defendant's brief that "The defense admits that its proposition goes further than the Iowa law on this subject and even the decisions of the United States Supreme Court." This concession should not be accepted because it is not true as to the pronouncements of the Supreme Court of the United States. The court has a right to presume that the states will enforce their own statutory laws. If our statute had been followed and defendant had been taken before a magistrate without unnecessary delay this defendant would have had a lawyer appointed for him.

Defendant indicated to the police officer his inability to employ a lawyer. He says he lacked knowledge that he was entitled to have a lawyer appointed for him. State's witnesses do not dispute these facts. He did not intelligently waive his right to counsel. Clearly the stage of the proceedings was both critical and accusatory. Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977.

"But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request. * * * The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." Carnley v. Cochran, 369 U. S. 506, 513, 82 S. Ct. 884, 889, 8 L. Ed.2d 70, 76.

"At every other stage of the proceedings at which a right to counsel attaches, the right does not depend on a request for counsel nor can it be presumed that failure to request counsel constitutes a waiver of that right. Carnley v. Cochran, 369 U. S. 506, 513, 82 S. Ct. 884, 8 L. Ed.2d 70 (1962); Uveges v. Com.

of Pennsylvania, 335 U. S. 437, 69 S. Ct. 184, 93 L. Ed. 127 (1948); Rice v. Olson, 324 U. S. 786, 65 S. Ct. 989, 89 L. Ed. 1367 (1945); see also Commonwealth ex rel. Remeriez v. Maroney, 415 Pa. 534, 204 A.2d 446 (1964); Commonwealth ex rel. Goodfellow v. Rundle, 415 Pa. 528, 204 A.2d 446 (1964); Commonwealth ex rel. O'Lock v. Rundle, 415 Pa. 515, 204 A.2d 439 (1964)." United States ex rel. Russo v. State of New Jersey, 351 F.2d 429, 437 (1965); see annotations at 5 A. L. R.3d 1269 and at 1360.

But the majority points out that we rejected the holdings in Russo v. New Jersey, supra. While we may have a right to do that, do we also have a right to reject the pronouncements of the Supreme Court of the United States on federal constitutional questions? What about Carnley v. Cochran (quoted in Russo, supra), to the effect that the right to counsel does not depend on a request nor can it be presumed that failure to request counsel constitutes a waiver? Do we have a right to reject that statement by the United States Supreme Court? If not, how can we say that after advising of a right to counsel, the police officer can secure admissible testimony even though he knew or should know (1) that defendant had no money to employ counsel, (2) that a magistrate would appoint counsel and, (3) that he had a legal duty to take defendant before such a magistrate without unnecessary delay?

If we still say that the admissions secured in this fashion are admissible, we must be driven to the explanation that time to interrogate witness without counsel constitutes necessary delay.

Neither inability to hire counsel nor ignorance of the right to demand counsel can be used as a basis to imply a waiver of such right by silence and acquiescence.

" 'If the right is deemed sufficiently important to be a due process requirement, why is it not sufficiently important to be made available to the unwary, ignorant and inexperienced as well as to the informed, sophisticated, and professional?' Kamisar & Choper, supra at 61. 'Failure to insist on an intelligent waiver of the right to remain silent inevitably discriminates against the ignorant and inexperienced, who may answer questions

without any apparent coercion simply because they believe that the police have the authority or power to make them.' 78 Harv. L. Rev. 177, 217, 220 (1964). See also Enker & Elsen, supra at 77; 107 U. Pa. L. Rev. 286, 289 (1959)." United States ex rel. Russo v. New Jersey, supra.

The trial court, under these circumstances, should have ruled Detective Iversen's testimony inadmissible.

I would reverse on assigned error V.

JUSTICES THORNTON, MASON and RAWLINGS join in this dissent.