STATE of Iowa, Appellee,

v.

Vicki Ann MYERS, Appellant.

No. 52980.

Supreme Court of Iowa.

May 7, 1968.

I. Joel Pasternak, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., and Ray A. Fenton, County Atty., of Des Moines, for appellee.

LARSON, Justice.

The defendant, Vicki Ann Myers, was charged with the crime of robbery with aggravation contrary to sections 711.1 and

711.2 of the 1966 Code of Iowa, by aiding and abetting Lloyd Richards in the robbery of James O. Martindale, attendant at the Erickson Holiday Service Station in Des Moines, Polk County, Iowa, the said Richards being armed with a dangerous weapon, with intent, if resisted, to kill or maim Martindale.

Pursuant to a plea of not guilty, trial was had before a jury, which returned a verdict of guilty, and when her motion for a new trial was overruled, judgment was entered committing her to the Women's Reformatory for a period of twenty-five years. She appeals. We affirm.

Appellant asserts the sole question raised on this appeal is the sufficiency of the evidence to warrant submission of the case to the jury or to support a guilty conviction. She lists as error the trial court's refusal to grant her motion for a directed verdict and her motion for a new trial, and lists seven brief points or propositions upon which she relies for reversal. Generally, we agree with these propositions, but disagree with her application of them to the facts disclosed by the evidence herein.

■ I. In considering the sufficiency of the evidence, we accept the version most favorable to the State. State v. Allnutt, Iowa, 156 N.W.2d 266, 267, and citations; State v. Allnutt, Iowa, 158 N.W.2d 715, decided May 7, 1968. We then turn to the evidence of the State as disclosed by the record.

James O. Martindale was on duty as a service station attendant at Second and Washington Avenues in Des Moines at about 4:45 A.M. on October 1, 1967, when one Lloyd Richards came into the station and asked to use the telephone. When the cash register was opened, Martindale said, Richards pulled out a hammer, threatened him with it, and robbed him of $113 or $114 in currency, but took no change. Richards then ran eastward down Washington Avenue out of sight, and Martindale called the police. This service station is about four blocks north of University Avenue, and at that time Martindale observed no vehicles in the area.

Officer Bruce A. Klingaman, of the Des Moines Police Department, testified he was on patrol near Second Avenue and Keo when he received a radio report of the robbery. He drove north on Second Avenue and, as he crested the hill beyond the Des Moines Freeway, he observed a white over black station wagon coming off Ohio Street southbound with its lights out. It made a left turn east onto University and turned on its lights. As he pursued this vehicle, Officer Klingaman advised the dispatcher he would make an attempt to stop it. Without losing sight of it, he saw it turn south on Pennsylvania Avenue, and he then turned on his red stop light. He could see that the driver was a female and the passenger in the seat beside her was a male. He saw the latter duck down in a forward motion before the car was brought to a full stop. The officer said he approached the vehicle on the driver's side, but before he reached the door the defendant driver got out of the car and started to walk toward him. In response to his request for her driver's license, she asked him, "What are you stopping me for?" In response to his question of where she came from, she told him she had just come from the City Drug Store and, prior to that, had been to a party at 10th and Center Streets.

The officer then directed his attention to the passenger. As he approached that door he pulled out his gun and demanded that the man get out. As he was getting out, the officer noticed a piece of brown cloth sticking out under the car seat. The passenger was then searched and placed under arrest. At that time other officers arrived to assist him, and the passenger, identified as Lloyd Richards, was advised of his constitutional rights and placed in a police car.

The officers then turned their attention to Miss Myers, the operator of the station wagon, and after she was advised of her

rights she was asked if she would allow them to "look through her vehicle." She declined and was told a search warrant would be obtained, and she was placed in another police car. Officer Klingaman and Sergeant Harlan then looked through the windshield of the station wagon Miss Myers had been driving and could see a shirt and a handle on the car floor sticking out from under the front seat. Miss Myers was again asked if they could look "through her car" and she again refused.

The vehicle was then impounded and taken to the police garage. After obtaining a search warrant and searching the vehicle, Officer Klingaman testified he found a brown sport shirt with tan and black imitation suede stripes on the front, a claw hammer with a brown handle and a black metal head, both under the front seat on the passenger's side. Under the floor mat on the passenger's side he also found $113.-00 in bills. These items were properly preserved and marked for evidence.

The radio description of the robber received by the officer stated he was a C.M. A. (apparently a colored male adult) in his late twenties wearing a brown sport shirt. It also appeared the officer was present when the station attendant later identified the hammer and the brown shirt or jacket as those possessed by the robber at the time of the robbery.

Two other police officers, who responded to Officer Klingaman's request for help, testified for the State. They stated defendant was advised of her constitutional rights, that she refused to tell them anything except that she had been to a bootlegger's on 10th Street. One of them also looked into the car Miss Myers had been driving and saw what appeared to be a brown cloth and a hammer handle sticking out from under the seat.

Pursuant to an application by defendant, Lloyd Richards, an inmate of the State Penitentiary at Fort Madison, was brought to Des Moines for this trial but did not testify. However, it was stipulated by defendant's counsel that Richards had been indicted for the crime of robbery with aggravation of this service station and that he entered a plea of guilty to that charge and was sentenced to a term of years in the penitentiary at Fort Madison, Iowa. Both parties then rested.

Defendant filed a motion for a directed verdict on the grounds that the State failed to prove that the defendant did aid or abet Lloyd Richards in the commission of the crime of robbery with aggravation, under our recent decision in State v. Daves, 259 Iowa 584, 144 N.W.2d 879, that it failed to prove defendant assented to the act or approved of the robbery, that it failed to show by circumstantial or direct evidence that she had knowledge that Richards was going to commit the crime of robbery with aggravation, and that there was no evidence which would raise a fair inference of guilt. It was overruled. Defendant introduced no evidence and the cause was submitted to the jury on or about December 15, 1967.

II. Certain applicable general propositions are well established in this jurisdiction. To aid and abet means to assent to an act or to lend countenance or approval either by active participation in it or by some other manner encouraging it. State v. Daves, supra, 259 Iowa 584, 144 N.W.2d 879, 881; State v. Fonza, 254 Iowa 630, 118 N.W.2d 548; State v. Smith, 248 Iowa 603, 608, 81 N.W.2d 657, 660. The guilt of a person charged with aiding and abetting must be determined upon the facts which show his part in the crime. State v. Daves, supra, and citations.

Knowledge or intent is an essential element in aiding and abetting. State v. Daves, supra; State v. Kneedy, 232 Iowa 21, 28, 3 N.W.2d 611, 615; State v. McCarty, 210 Iowa 173, 177, 230 N.W. 379, 381. This is seldom capable of direct proof, but we have often held it may be inferred from the proven surrounding circumstances. State v. Kneedy, supra;

State v. Van, 232 Iowa 34, 2 N.W.2d 748, and citations; State v. Miller, 259 Iowa 188, 142 N.W.2d 394.

Participation in criminal intent may be inferred from one's presence in and near the scene of the crime, and his conduct before or after the offense is committed. State v. Myers, 253 Iowa 271, 111 N.W.2d 660; State v. Miller, supra; 22 C.J.S. Criminal Law §§ 87, 88; 21 Am.Jur.2d, Criminal Law, §§ 122, 123; Wharton's Criminal Law, Vol. 1, 12th Ed., §§ 246, 256, 258.

Any evidence, circumstantial or direct, must be sufficient to raise a fair inference of guilt and, of course, must generate something more than suspicion or speculation. State v. Myers, supra; State v. Daves, supra. Where evidence of guilt is wholly circumstantial, it must be inconsistent with any other reasonable hypothesis of innocence. State v. Miller, supra; State v. Daves, supra; State v. Sigman, 220 Iowa 146, 149, 261 N.W. 538, 539.

III. Appellant correctly contends that under this charge the State was required to establish that the defendant either directly committed the act constituting robbery with aggravation or that she knowingly aided and abetted the commission of the act. State v. Daves, supra, 259 Iowa 584, 144 N.W.2d 879; State v. Mabbitt, 257 Iowa 1063, 135 N.W.2d 525; State v. Myers, supra, 253 Iowa 271, 111 N.W.2d 660; State v. Kneedy, supra, 232 Iowa 21, 3 N.W.2d 611. Since there was no claim defendant committed the act of robbery, that act being done by Lloyd Richards, the question before us is whether there was substantial evidence to support a finding that she aided and abetted Richards in the commission of the crime. Apparently, we have not passed upon the sufficiency of a combination of circumstances such as are presented by this appeal. However, the elements involved have received exhaustive consideration in the above-mentioned cases and need no further discussion herein.

IV. There is little dispute in the material facts, although appellant contends the State failed to adequately establish the time of this alleged crime. She relies upon a claimed variance revealed by the testimony of Officer Klingaman and the station attendant, James Martindale. The former stated the radio report of the robbery was made at approximately 4:34 A.M., and the latter said the robbery occurred "at about a quarter to five in the morning." It is true the State must establish beyond reasonable doubt the time and place of an alleged crime, but we do not find in this testimony any fatal defect in that proof. The actual time of this robbery was sufficiently established and the place clearly identified.

V. Appellant's principal contention is that the evidence produced surrounding her detention and apprehension was not sufficient circumstantial evidence to generate a jury question as to her participation, encouragement or countenance and approval of the crime of robbery with aggravation. She maintains it was not sufficient to prove the necessary element of knowledge. We cannot agree. Perhaps some of the circumstances revealed, standing alone, would not be sufficient, but when taken together, the following circumstances are sufficient, i. e., the officer's observation of her operation of an automobile without lights at that time, about seven blocks south and east of the station robbed, in which a person matching the description of the robber was a passenger, and the discovery of the fruits of the robbery, the instrumentalities used, and other physical evidence connected with the robbery, secreted under the floor mat and front seat of the vehicle operated and controlled by her.

This is not like the Daves case, strongly relied upon by appellant, for here it is defendant, not the robber, who was found in possession and control of the stolen money and the instrumentalities used in the robbery. The jury here could find that she knew of the commission of the crime and

was in the act of aiding the actual robber's effort to secrete the physical evidence and escape apprehension.

The judgment of the trial court must be affirmed.

Affirmed.

All Justices concur.